STANDARD OIL CO. *v.* NATIONAL SURETY CO. *et al.*\*

(Division A.   March 29, 1926.)

[107 So. 559.   No. 25523.]

1. MUNICIPAL CORPORATIONS.   *"Political subdivision of state" is subdivision to which has been delegated certain functions of local government.*

   A "political subdivision" of a state is a subdivision thereof to which has been delegated certain functions of local government.

2. DRAINS.   *Drainage districts, vested with certain necessary governmental powers, are political subdivision of state.*

   Drainage districts that are created for the purpose of draining and reclaiming wet and overflowed lands, and of conserving the public health and convenience, for the accomplishment of which they are vested with the necessary governmental powers, are political subdivisions of the state which created them.

3. DRAINS.   *Provision that public contractor will promptly pay all persons supplying him labor or material need not be set forth in his bond, but such provision in contract is sufficient if bond is conditioned that contractor shall perform all matters and things contained, set out, or referred to in contract (Laws 1918, chapter 217, sections 1, 3).*

   The provision of section 1, chapter 217, Laws of 1918, which requires a person entering into a contract with the state, etc., for the construction of any building or work to execute the usual bond with good and sufficient sureties, which the additional obligation that such contractor shall promptly make payment to all persons supplying labor or material therefor, does not require this additional obligation to be set forth in the bond, but a provision therefor in the contract is sufficient when the condition of the bond is that the contractor shall well and truly perform all the matters and things contained, set out, or referred to in the contract.

4. Limitation of Actions. *One demurring and wishing to set up statute of limitation as ground thereof should assign such statute in demurrer as one of grounds* (*Code* 1906, *section* 754 [*Hemingway's Code, section* 537]).

　In a case wherein the statute of limitation can and is sought to be availed of by demurrer, it must be assigned in the demurrer as one of the grounds therefor.

5. Drains. *Oil and gasoline furnished contractor for use in operating his machinery and digging canals and ditches for drainage district are "materials used in prosecution of work," within statute relating to contractor's bond* (*Laws* 1918, *chapter* 217, *section* 1).

　Oil and gasoline furnished a contractor for use in operating machinery used by him in digging canals and ditches for a drainage district are "materials" used in the prosecution of the work within the meaning of section 1, chapter 217, Laws of 1918.

---

*Corpus Juris-Cyc References: Drains, 19CJ, p. 616, n. 78; p. 690, n. 93, 94. Limitation of Actions, 37CJ, p. 1210, n. 97. Political Subdivision of the State, 31Cyc, p. 909, n. 30 New. On governmental nature of drainage district, see 9 R. C. L., pp. 620, 644; 2 R. C. L. Supp., pp. 844, 847; 4 R. C. L. Supp., p. 618. On nature of labor and material which will support an action upon a contractor's bond, see notes in 43 L. R. A. (N. S.) 162; L. R. A. 1915F, 951.*

Appeal from circuit court of Quitman county.

Hon. W. A. Alcorn, Jr., Judge.

Suit by the Standard Oil Company against the National Surety Company and another on a contractor's bond. From a judgment sustaining a separate demurrer to the declaration by each of the defendants, plaintiff appeals. Reversed and remanded.

*Wells, Stevens & Jones, G. G. Lyell* and *Boone, Lowery, & Boone,* for appellant.

A. *The demurrer of Clark-Hunt Contracting Company.* The first ground of the demurrer filed by Clark-Hunt Contracting Company reads as follows: "Because it appears that this suit is a suit brought to charge the said defendants jointly with their co-defendant, National

Surety Company, for certain obligations and debts, and it affirmatively appears that no joint obligation exists as against the said defendants, and the said National Surety Company, their said co-defendant.''

The court after sustaining the demurrer of the National Surety Company on the sixth ground of its demurrer, sustained the demurrer of the Clark-Hunt Contracting Company on its first ground because the court conceived the law as being that if two persons are sued jointly and severally and the suit fails as to one, it must fail as to the other. In short, the court took the position that if a suit against the principal obligor on his bond and his surety on said bond fails as to the surety, there can be no recovery against the principal obligor, which we are free to confess is a new theory of law to us.

We regard the decision of the court on this proposition as being so palpably erroneous as to require no argument other than a statement thereof. There are many cases where for one reason or another a surety is released while the principal obligor is always held and it makes no difference that the surety cannot be held in this case, if the court should reach that conclusion; for the declaration charges and the demurrer admits that the Clark-Hunt Contracting Company ordered the goods from appellant, received and used them, and has not paid for them and the mere fact, as the lower court saw it, that appellant is undertaking to hold the Clark-Hunt Contracting Company and its surety jointly and severally liable for these items does not in any wise release the liability of the Clark-Hunt Contracting Company under the facts alleged in the declaration, even though the surety ultimately be absolved from any liability therefor and even though they have both been sued therefor in the same declaration.

As a plain matter of law, the suit was properly brought against the Clark-Hunt Contracting Company and its surety, for under section 2910; Hemingway's Code, the National Surety Company, if it had been sued alone,

would have been required to have given notice of the suit to the Clark-Hunt Contracting Company.

Furthermore, if the Clark-Hunt Contracting Company, or the National Surety Company for that matter, felt that there was a misjoinder of defendants, it could not be reached by demurrer and could have been reached only by a plea of misjoinder under the express provisions of section 506, Hemingway's Code. For the application of this section, see *Aven* v. *Singleton et al.,* 132 Miss. 256, 96 So. 165.

Even if we concede the relationship of principal and surety does not create a strictly joint and several obligation, it cannot be questioned that it is proper to sue the principal and surety in the same suit in cases arising out of the breach of the conditions of a bond. See *Davis* v. *Hoopes,* 33 Miss. 173; *Horne v. Tartt,* 76 Miss. 304; *Gillespie* v. *Hauenstein,* 72 Miss. 838; 32 Cyc. 125, par. 4.

Moreover, the obligation here sued on is joint and several by the express provisions of the bond itself, and also by the express provisions of sections 2169 and 2170, Hemingway's Code.

It cannot be sound law in this age that where one sues his debtor and his debtor's surety, jointly or severally, as is the case here, that he cannot recover from his debtor even though he fails to recover against the surety. In the language of Justice MITCHELL in *Philadelphia* v. *Stewart,* 195 Pa. 309, 45 Atl. 1056, we say that such a contention is "as bare of legal as it is of moral merit."

B. *The demurrer of the National Surety Company.* The demurrer of the National Surety Company was sustained on its sixth ground which reads as follows: "Because it appears that the said plaintiff has not supplied any materials for or about the construction of any building or work, or the doing of any repairs in or about any building or work done, or attempted to be done, or proper to be done, by the said Pompey Lake Drainage District."

The demurrer brings before this court for decision for
the first time the question of whether or not oils, greases
and gasoline and other material, such as were sold to and
used by the Clark-Hunt Contracting Company in operat-
ing the dredges on the work under its contract with the
drainage district, constitute materials used in the *prose-
cution* of the work within the meaning of chapter 217,
Laws of 1918. See *Watkins* v. *U. S. F. & G. Co.*, 103 So.
224. The following additional cases demonstrate the er-
ror of the lower court on this point.

Claims for patterns furnished to the molding depart-
ment of the builder of a vessel for the United States are
within the obligation of the latter's bond executed con-
formably to a statute providing that it shall be condi-
tioned for the payment of those furnishing labor and ma-
terials in the prosecution of the work. *Title Guaranty
& T. Co.* v. *Crane Co.*, 219 U. S. 24, 55 L. Ed. 72, 31 Sup.
Ct. Rep. 140, affirming 89 C. C. A. 618, 163 Fed. 168.

And lumber furnished to a contractor for the erection
of a public bridge, to be used by him for false work in
the course of the work, is embraced by his bond, which
is conditioned for the payment of all claims for labor
and materials furnished for the work. *Empire State
Surety Co.* v. *Des Moines*, 152 Iowa, 531.

It is held that coal furnished a contractor and used for
generating power in the course of the work is embraced
by the bond of a contractor for public improvement, exe-
cuted in pursuance of statute, and conditioned for the
payment of all materials used and services rendered in
the execution of the contract. *Zipp* v. *Fidelity & D. Co.*,
73 App. Div. 20, 76 N. Y. Supp. 386.

And coal so used is material within the meaning of his
statutory bond to the United States, so as to support an
action thereon in favor of the person furnishing it. *City
Trust, S. D. & Surety Co.* v. *U. S.*, 77 C. C. A. 397, 147
Fed. 115, disapproving *United States to Use of Stand-
ard Oil Company* v. *City Trust, S. D. & Surety Co.*, 21
App. D. C. 369, and *United States to Use of Chapman* v.

*City Trust, S. D. & Surety Co.*, 23 App. D. C. 153. See, also, *National Surety Co.* v. *Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337; *George H. Simpson Co.* v. *Com.*, 202 Mass. 326, 88 N. E. 911; *E. I. Dupont Denemours Powder Co.* v. *Culgin-Pace Contracting Co.*, 206 Mass. 585, 92 N. E. 1023; *Kansas City to Use of Kansas Hydraulic Press Brick Co.* v. *Youmans*, 213 Mo. 151, 112 S. W. 225; *B. F. Avery & Sons et al.* v. *Woodruff & Cahill et al.*, 144 Ky. 227, 137 S. W. 1088; *Schaghticoke Powder Company* v. *Greenwich & Johnsonville Ry. Co. et al.* (N. Y.), 76 N. E. 153; *F. G. Moritz* v. *Lewis Construction Co. et al.* (Wis.), 146 N. W. 1120; *Title Guaranty & T. Co.* v. *Puget Sound Engine Works* (1908), 89 C. C. A. 618, 163 Fed. 168, affirmed in (1911) 219 U. S. 24, 55 L. Ed. 72, 31 Sup. Ct. Rep. 140; *Illinois Surety Co.* v. *John Davis Co.* (1917), 244 U. S. 376, 61 L. Ed. 1206, 37 Sup. Ct. Rep. 614; *United States to Use of Thos. Laughlin Co.* v. *Morgan* (1900), 111 Fed. 474; *Taylor* v. *Connett* (1921), 277 Fed. 945, affirming *United States to Use of Norfolk Southern R. Co.* v. *D. L. Taylor Co.* (1920), 268 Fed. 635; *Southern Surety Co.* v. *Municipal Excavator Co.*, L. R. A. 1917-B 558, (Okla.) 160 Pac. 617; *Chicago Lumber Co.* v. *Douglas*, 44 L. R. A. (N. S.) 843, 89 Kan. 308, 131 Pac. 563; *Multonomah* v. *United States Fidelity & G. Co.*, L. R. A. 1918-C 685, 87 Or. 198, 170 Pac. 525; *Borgan* v. *National Surety Co.*, L. R. A. 1918-D, 776, 246 U. S. 257, 62 L. Ed. 703, 38 Sup. Ct. Rep. 250; *National Surety Co.* v. *United States to Use of Pittsburgh & B. Co.*, L. R. A. 1917-A 336, 143 C. C. A. 99, 228 Fed. 577; *U. S. F. & G. Co.* v. *U. S.*, 111 C. C. A. 71, 189 Fed. 339, 231 U. S. 239, 58 L. Ed. 200; *Chamberlain* v. *Lewiston*, 23 Idaho 154, 129 Pac 1069; *Barker & S. Lumber Co.* v. *Marathon Paper Mills Co.*, 146 Wis. 12, 36 L. R. A. (N. S.) 875, 130 N. W. 866, and *E. R. Darlington Lumber Co.* v. *Westlake Const. Co.*, 161 Mo. App. 723, 141 S. W. 931.

Chapter 217, Laws of 1918, is virtually a rescript of the federal statute on this subject which is the Act of 1905 and found in 8 Federal Statutes Ann. (2 Ed.), page

374. There are two primary rules of construction of bonds given under this act which are uniformly applied by the United States supreme court; to-wit: The bond must be liberally construed in favor of the person claiming its protection. See *U. S. F. & G. Co.* v. *Brick Co.*, 191 U. S. 416, 48 L. Ed. 242; *Equitable Surety Co.* v. *U. S.*, 234 U. S. 448, 58 L. Ed. 1394; *Mankin* v. *U. S.*, 215 U. S. 535, 54 L. Ed. 316; *Title, Guaranty & T. Co.* v. *Crane Co.*, 219 U. S. 24, 55 L. Ed. 72; *U. S.* v *Am. Surety Co.*, 200 U. S. 197, 50 L. Ed. 437.

The second rule is that the court will refuse to limit the act to labor and material directly incorporated into the work. See *Illinois Surety Co.* v. *John Davis Co.*, 244 U. S. 376, 61 L. Ed. 1206; *Illinois Surety Co.* v. *U. S.*, 24 U. S. 214, 60 L. Ed. 609; *U. S.* v. *Brass* and *Copper Co.*, 218 U. S. 452, 54 L. Ed. 1107; *Title Guaranty & T. Co.* v. *Crane*, 219 U. S. 24, 55 L. Ed. 72; *U. S. F. & G. Co.* v. *U. S.*, 231 U. S. 237, 58 L Ed. 200; *Brogan* v. *National Surety Co.*, 246 U. S. 257, 62 L. Ed. 703.

Looking to the purpose of the bond in this case, it immediately becomes evident that it is the purpose of the bond to secure the performance of the contract and when we look to the contract we find that one of the obligations thereof is that the contractor will pay all persons "for material furnished in the prosecution of the work."

It is submitted that under the authorities cited, there can be no reasonable construction except that the National Surety Company is bound to appellant and it is further submitted that we are entitled to reversal and judgment here as against it.

*Gore & Gore* and *Cutrer & Smith,* for appellees.

One of the grounds of demurrer on behalf of National Surety Company is that there is no privity of contract between the National Surety Company and the plaintiff, Standard Oil Company, and that the proceeding instituted by the Standard Oil Company, surety on the con-

tractor's bond, was instituted under and by virtue of chapter 217, Laws of 1918, and that the Pompey Land Drainage District is not such a corporation or organization as is embraced within the terms and purview of said chapter. Unless some authority other than the face of the bond is resorted to, there can be no liability.

The National Surety Company, however, is sought to be held by the Standard Oil Company on the theory that the Standard Oil Company furnished certain materials to the Clark-Hunt Contracting Company for use in constructing the system of drainage ditches embraced in the contract, between the Clark-Hunt Contracting Company and the Pompey Lake Drainage District, and that under and by virtues of chapter 217, Laws of 1918, the plaintiff has a right of action against the National Surety Company in default of the payment by the contractor of the materials so furnished. The materials so furnished are gasoline, oils and greases.

We contend that a drainage district under the law is not such a sub-division of the state as to bring it within the purview of chapter 217, Laws of 1918. If this is true, manifestly, the plaintiff has no cause of action against the National Surety Company. A drainage district is not a state, nor any county thereof, nor municipality therein, nor any political sub-division whatsoever therein. Chapter 217, Laws of 1918, limits its provisions and application only to corporations which come under the particular classification of state, county, municipality or political sub-division. If a drainage district is in none of the classes referred to in the statute, the law has no application to it.

The supreme court of this state has many times held that a drainage district is not a municipality. *Robertson, etc.,* v. *Thomas,* 118 Miss. 423, 79 So. 289; *Houston* v. *Mayor et al., Drainage Commissioners,* 120 Miss. 523, 82 So. 334.

It will be conceded that a drainage district is not a state, nor is it a county, and since it is not a municipality,

the only other classification left open is whether or not it is a political sub-division of the state. The supreme court of this state has described what a drainage district is and has classified it as "an involuntary public corporation." *Stephens* v. *Drainage District*, 123 Miss. 884, 86 So. 641. A political division of the state is: "A division formed for the more effectual or convenient exercise of political powers within the political localities." 31 Cyc. 907.

Certain it is that a drainage district exercises no political powers within the state of Mississippi. It is organized solely and exclusively for the local benefit of local lands, to drain the lands more effectually. The drainage commissioners compose a board for purely administrative purposes. The board exercises no political powers.

The provision of the bond referred to by counsel in their brief does not specifically obligate the Surety Company to pay off and discharge all claims for labor and material used in the performance of the contract. The authorities are universal that the liability of a surety is *strictissimi juris.* See 21 R. C. L. 975.

The only purport and intention of the bond in this case is to insure the faithful performance of the contract with the drainage district. Anything *dehors* the strict and literal construction of that obligation, the surety company is not bound for. 21 R. C. L. 977.

This is particularly true when we take into consideration that the only laborers and materialmen entitled to any lien are those who perform labor on the project and for material which actually went into the structure itself. *Dodds* v. *Cavell*, 133 Miss. 470, 97 So. 813.

Likewise, in order for a lien to attach in the state of Mississippi, the agreement must be between the owner with the drainage district and the claimant, to-wit: The Standard Oil Company. *Delta Lumber Co.* v. *Well*, 119 Miss. 350, 80 So. 782.

A well-considered case is that of *Deckle* v. *Valrico Sand Stone Company*, 74 Fla. 342, 77 So. 95. In that case it is held that a bond given to indemnify owners should not be held to give a right of action to laborers and material-men having no claim against the owner, unless the terms clearly require such interpretation.

Our court has gone so far as to hold that an owner employing a contractor is not liable to materialmen and laborers, unless indebted to the contractor when notified of the claim. *Citizens Lbr. Co.* v. *Nettleville*, 102 So. 178.

Oil, grease and gasoline are not "materials used in the prosecution of the work" within the meaning of the statute. There are many authorities contrary to authorities cited in counsels' brief and upholding our contention. See *Palm Beach Bank & Trust Co.* v. *Lainhard*, 95 So. 122; *Dodds* v. *Cavell*, 133 Miss. 470; *Tod* v. *Kentucky Union R. Co.*, 52 Fed. 240; *Potter Mfg. Co.* v. *Meyer*, 86 N. E. 837, A. S. R. 267.

The court was eminently correct in sustaining the demurrer on behalf of Clark-Hunt Contracting Company. We do not contend that if the Clark-Hunt Contracting Company had been sued alone on debt that the demurrer could have been properly sustained, but under the pleadings herein the demurrer was properly sustained.

It is manifestly true that the same principle of law applicable to the nature of a drainage district as a bar to the recovery for the surety company would necessarily be a bar to the suit against Clark-Hunt Contracting Company. A drainage district is a private corporation, a separate entity with power to sue and be sued, plead and be impleaded, and in no wise is to be considered as a part of the county, nor is it a municipality, nor is it, we submit, a political sub-division of the state. *Robertson* v. *Thomas*, 118 Miss. 423.

A drainage district was not intended to be within the purview of the statute, and the court was manifestly correct in sustaining the demurrer.

*Boone, Lowrey & Boone, Wells, Stevens & Jones* and
*G. G. Lyell,* in reply, for appellant.

*The liability of the surety and privity of contract.* It
is argued for appellees that the liability of a surety is
*strictissimi juris* and 21 R. C. L. 975, is cited to support
the rule.   This old principle no longer furnishes a city
of refuge to a surety upon the bond of a contractor in-
debted to laborers and materialmen and sub-contractor.
The pertinent citation in such cases is 21 R. C. L. 985,
par. 35.   One of the leading cases upholding this wise
modern rule is *Royal Indemnity Co. of N. Y. v. Northern
Granite & Stone Co.,* 100 Ohio State 373, 126 N. E. 405,
12 A. L. R. 378, with a voluminous case note touching upon
the liability of a paid surety company as distinguished
from that of a gratuitous surety.

But the question upon this point and privity of con-
tract, even without chapter 217, Laws of 1918, is settled
in Mississippi by *National Surety Co. v. Hall-Miller Dec-
oratng Co.,* 104 Miss. 626, 61 So. 700.

*Chapter 217, Laws of 1918, is applicable to the instant
suit.*   While we have sufficiently demonstrated that the
appellant is entitled to maintain this action against the
contractor and surety, even if said chapter 217, Laws of
1918, is not applicable to a drainage district, still we
think it can be demonstrated that a drainage district is
within the terms of said act.

Appellees contend that a drainage district is not a po-
litical sub-division.   It is settled principle of statutory
construction that in the construction of a statute the
court will consider the old law, the mischief and the rem-
edy.   In determining whether a drainage district falls
within the classification ''any political sub-division what-
soever therein,'' let us consider why it should be omitted.

Certain it is that laborers and materialmen in con-
nection with a drainage district are just as entitled to
be paid by the contractor and a surety upon his bond
as those connected with a road or school district, or
any public work in the state, as for any political sub-

division of the state. Therefore, it is reasonable to conclude that the legislature intended the language "any political sub-division whatsoever therein"—that is to say, the state—to include a drainage district as much as a road or school district, etc.

Our own decisions and the weight of authority elsewhere is to the effect that in the creation of a drainage district it is the state itself which creates the district and that a governmental function is being exercised by such creation. See section 4277, Hemingway's Code; *Cox* v. *Wallace,* 100 Miss. 525, 56 So. 461; *Daily* v. *Swope,* 47 Miss. 367; *Mound* v. *Miller,* 170 Mo. 240, 70 S. W. 721, 60 L. R. A. 190, 94 A. S. R. 727.

It is the express decision of our own court that the agency thus created is an arm of the state, *a political subdivision of the state. Cox* v. *Wallace,* 100 Miss. 525, 56 So. 461. Numerous other decisions of our own court emphasize the public character of this body politic. *Jones* v. *Drainage District,* 102 Miss. 796 at 799, 59 So. 921; *Board of Supervisors of Yazoo County* v. *Grabel,* 111 Miss. 893, 72 So. 777; *Stephens* v. *Drainage District,* 123 Miss. 884 at 900, 86 So. 641, citing *Nugent* v. *Board of Levee Commissioners,* 58 Miss. 197.

Authorities from other states to the effect that a drainage district is a political sub-division of the state include *Houck* v. *Little River Drainage District,* 239 U. S. 254, 60 L. Ed. 266 at 273; 19 C. J. 615, "Drains," par. 13, "Nature and Incidents of Districts," and authorities cited in Note 77.

Chapter 217, Laws of 1918, is applicable to the instant case and the suit is properly brought against the principal and surety, as required by said act. Furthermore, as we have demonstrated, under the present rule in this state and elsewhere, there is such privity of contract as permits the principal and surety to be sued in such a case.

SMITH, C. J., delivered the opinion of the court.

This is a suit by the appellant, under chapter 217, Laws of 1918, on the bond of Clark-Hunt Contracting Company

on which the National Surety Company is surety, execut-
ed by it to the Pompey Lake Drainage District, to insure
the "construction and completion," of several ditches
and canals for which it had contracted with the Pompey
Lake Drainage District.   One of the provisions of the
contract entered into by the Clark-Hunt Contracting
Company with the drainage district is:

"The contractor shall discharge all claims for work
done and material furnished in the prosecution of the
work, and shall, upon request, furnish the board with
satisfactory evidence that all persons who have done
work or furnished material under this contract have been
fully paid for such work or material."

The condition of the bond is that—"Clark-Hunt Con-
tracting Company shall well and truly perform all the
matters and things therein (referring to the contract)
contained and set out, or therein referred to, as it is obli-
gated and bounden so to do, and shall well and truly per-
form all the matters and things as it is or may become
bound so to do."

The declaration alleges that the appellant sold Clark-
Hunt Contracting Company oil and gasoline of the value
of four hundred thirty-one dollars and seventy-nine cents
all of which was used by Clark-Hunt Contracting Com-
pany "in the performance of the drainage work under
the contract with the Pompey Lake Drainage District,
the same being material necessary in the operation of
the said work, under said contract;" that Clark-Hunt
Contracting Company abandoned its contract, and notice
thereof was published by the drainage district as pro-
vided by the statute.

Separate demurrers were filed by each of the defend-
ants, and from a judgment sustaining them the appel-
lant has brought the case to this court.

The contentions of the National Surety Company are:
First, there is no privity of contract between it and the
appellant; and, second, the suit cannot be maintained
under chapter 217, Laws of 1918, for four reasons: (1)

A drainage district is not a political subdivision of the
state; (2) the bond does not contain the additional obli-
gation required by the statute, and the contractor ''shall
promptly make payments to all persons supplying labor
or material therefor;'' (3) it does not appear from the
declaration that the suit was brought within one year
after Clark-Hunt Contracting Company is alleged to
have abandoned its contract with the drainage district,
as required by section 3, chapter 217, Laws of 1918; and
(4) the material furnished the Clark-Hunt Contracting
Company by the appellant was not placed in, and did not
become a part of, the canals, etc., which the Clark-Hunt
Contracting Company agreed to construct for the drain-
age district. The first of these contentions merges into,
and will be dealt with, as a part of the second.

A political subdivision of a state is a subdivision there-
of to which has been delegated certain functions of local
government. Drainage districts are created for the pur-
pose of draining and reclaiming wet and overflowed land,
and of conserving the public health and convenience, for
the accomplishment of which they are vested with the
necessary governmental powers, and, consequently, they
are political subdivisions of the state by which they are
created. 19 C. J. 615; *Houck* v. *Little River Drainage
District,* 36 S. Ct. 58, 239 U. S. 254, 60 L. Ed. 266; *People*
v. *Hepler,* 88 N. E. 491, 240 Ill. 196.

Section 1, chapter 217, Laws of 1918, provides:

''That any person entering into a formal contract with
this state, any county thereof, municipality therein, or
any political subdivision whatsoever therein, for the con-
struction of any building or work or the doing of repairs,
shall be required before commencing same to execute the
usual bond, with good and sufficient sureties, with the ad-
ditional obligation that such contractor or contractors
shall promptly make payments to all persons supplying
labor or material therefor. . . .''

It is true that the bond here in question does not pro-
vide on its face that the Clark-Hunt Contracting Company

shall promptly make payment to all persons supplying labor or material for the work to be done by it for the drainage district, but it does expressly provide for the performance by the Clark-Hunt Contracting Company of all "the matters and things" contained, set out, or referred to in its contract with the drainage district, one of which is that it "shall discharge all claims for work done and materials furnished in the prosecution of the work," and shall furnish the drainage district with evidence that "all persons who have done work or furnished material under this contract have been fully paid for such work or material." The performance of this stipulation of the contract is, therefore, one of the obligations and of the bond executed by the Clark-Hunt Contracting Company to insure the performance by it of its contract. The statute does not require the obligation that such contractor shall promptly make payments, etc., to be written in the bond. It simply requires such payments to be one of the obligations of the bond.

Assuming, for the sake of argument, that it does not appear from the declaration that this suit was begun within one year after the Clark-Hunt Contracting Company abandoned its contract with the drainage district, and that this defect, if such it be, can be raised by demurrer (*G. & S. I. R. Co.* v. *Bradley*, 69 So. 166, 110 Miss. 152, Ann. Cas. 1918D, 554), it is not assigned in the demurrer as one of the causes therefor, and consequently, cannot be considered. Section 754, Code of 1906 (Hemingway's Code, section 537).

It is true that the material furnished to Clark-Hunt Contracting Company by the appellant did not go into or become a part of any structure, but it could have been used by the contracting company "in the prosecution of the work" in other ways. It is clear from the contract that the canals were to be dug by machinery, and, if the oil and gasoline sold by the appellant to Clark-Hunt Contracting Company were used by it in operating this ma-

chinery, it was then, of course, used "in the prosecution of the work."

· The contention of Clark-Hunt Contracting Company is that this suit is and must have been against it and the National Surety Company jointly, and, if the National Surety Company is not liable, that it (Clark-Hunt Contracting Company) could not be here held, but must be sued separately. If there is anything in this contention, it, of course, disappears when the surety company is held liable.

*Reversed and remanded.*