McELRATH & ROGERS *et al. v.* W. G. KIMMONS & SONS
*et al.**

(Division B.   April 11, 1927.)

[112 So. 164.   No. 26372.]

1. HIGHWAYS. *Public contractor's bond covers only material and labor consumable in work; public contractor's bond does not cover material and equipment necessary for contractor to have to perform work (Laws 1918, chapter 217).*

The bond required of contractors in public work by chapter 217, Laws of 1918, does not make a contractor and his bondsmen liable on the bond for material and equipment necessary for the

contractor to have to perform the work, but only covers material and labor consumable in the work. The contractor, or subcontractor, must furnish his equipment, and the bond secures only the payment for labor and material which enters into the work, or is necessarily consumed in the transaction of the work.

2. HIGHWAYS. *Repairs on public contractor's equipment are not secured by his bond; public contractor's bond does not secure purchase price of machinery coming under head of equipment (Laws 1918, chapter 217).*

Repairs on contractor's equipment are not secured by such bond; neither does the bond secure the purchase price of machinery which comes under the head of equipment.

3. HIGHWAYS. *Public contractor's bond may cover necessary food and supplies to board laborers pursuant to contract, if camp or commissary is not operated for profit (Laws 1918, chapter 217).*

Where a contractor contracts with his laborers or employees to pay certain wages and board, and there is no place whereat the laborers can obtain board, the bond of the contractor may be binding for necessary food supplies, provided such camp or commissary is not operated for profit, and does not exceed the actual cost.

4. HIGHWAYS. *Clothes, cigarettes, tobacco, notions, and cash furnished laborers by third parties are not protected by contractor's bond (Laws 1918, chapter 217).*

Clothes, cigarettes, tobacco, notions, and cash furnished to laborers by third parties are not recoverable under the bond provided for in said chapter 217, Laws of 1918.

5. HIGHWAYS. *Furniture and household effects for maintaining contractor's camp to board labor do not come within contractor's bond (Laws 1918, chapter 217).*

Furniture and household effects supplied to a contractor to maintain a camp in which to board his labor are items for equipment, and are not recoverable from the contractor's bondsmen.

6. APPEAL AND ERROR. *On allowance in full of account against contractor and bondsmen containing items for equipment and items directly consumable in work and other items, purpose of which was not clearly shown, supreme court will reverse case for proper proof and separation of items (Laws 1918, chapter 217).*

Where an account, as a basis for suit against a contractor and his bondsmen, under the above chapter, contains items for the contractor's equipment and other items directly consumable in the transaction of the work, and also other items, the purpose of which is not shown clearly in the account, the court will, where the account is allowed in full by the court below, reverse the case •

for proper proof and separation of the items according to their intended use.

### On Suggestion of Error.

PAYMENT. *Ordinarily, payments on account will be applied to oldest items; money derived from particular source or fund need not necessarily be applied on oldest items of account on which paid; where part of account is properly payable out of particular fund, and part is not, payment with such funds will be applied to items properly payable therefrom; moneys derived from payment on contract should be applied first to items of account furnished to contractor for work proper.*

While, ordinarily, payments made upon an account will be applied to the oldest items of the account, yet this is not true where the money paid is derived from a particular source or fund; and, where a part of the account is properly payable out of a particular fund, and a part is not payable out of such fund, the payment made with such funds will be applied to the items properly payable out of the particular fund, whether such item be the oldest items in the account or not.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 1199, n. 24; Highways, 29CJ, p. 612, n. 65, 67; p. 613, n. 71.

*Corpus Juris-Cyc References: Payment, 30Cyc, p. 1244, n. 56; p. 1248, n. 72.

APPEAL from circuit court of Alcorn county.

HON. C. P. LONG, Judge.

Suit by W. G. Kimmons & Sons against McElrath & Rogers and others, in which the Corinth Furniture Company and others intervened. From the judgment below, defendants and the Corinth Furniture Company appeal, and plaintiffs cross-appeal. Affirmed in part, and reversed in part, and remanded, with directions.

*Bruce D. Newson,* for appellants.

I. *The claim of W. G. Kimmons & Sons.* The testimony before the court was that all hay, oats, mixed feed and crops were used in the construction of the road. However, the court allowed claimants eight sacks of flour,

eight dollars; one gallon of oil, eighty-five cents; freight, one dollar and fifty-two cents; freight, five dollars and ninety-three cents; freight, four dollars and sixty-seven cents; four sacks of meal, one dollar and twenty-five cents; freight, one dollar and sixty-eight cents; freight, eight dollars and three cents; one auto tire and tube, twenty-five dollars; one auto tire and tube, second purchase, twenty-five dollars, all of which should have been excluded, if anything at all should have been allowed Kimmons & Sons.

II. *The claim of W. H. Berkheiser, doing business as Service Lumber and Manufacturing Company.* This was for form lumber and after it had been used, it was piled up on the side of the road and removed by other parties. The evidence shows that this lumber was worth at least fifty per cent of the sale value and, therefore, if the contractor and his surety are liable for any amount, the most they are liable for will be one-half of the total amount allowed by the lower court. *Kennedy* v. *Commonwealth,* 182 Mass. 480, 65 N. E. 828, and cases cited. See, also, *Oppenheimer* v. *Morrell,* 118 Pa. 189, 12 Atl. 307; *Farmers Irrigation Co.* v. *Kaum* (Colo.), 135 Pac. 766; *Beals* v. *Fidelity & Deposit Co.* (N. Y.), 78 N. Y. Supp. 584; *Rittenhouse & Embree Co.* v. *Brown & Co.,* 254 Ill. 549, 98 N. E. 971; *Empire State Surety Co.* v. *City of Des Moines,* 131 N. W. 879; *Thomas* v. *Commonwealth,* 215 Mass. 369, 102 N. E. 428; *Ames* v. *Dyer,* 41 Me. 397; *Ramsey* v. *Hawkins* (Fla.), 82 So. 823.

The well-established doctrine is that the words "material furnished for any structure, work or improvement in contracts of this kind" apply only to such materials as enter into and become competent parts of the structure, work or improvement contemplated. *Comm.* v. *Nat'l Surety Co.,* 253 Pa. 5, 92 Atl. 1034; *Philadelphia* v. *Malone,* 214 Pa. 97, 63 Atl. 539; *Empire State Surety Co.* v. *Des Moines,* 131 N. W. 870.

Some courts hold broadly that to sustain a mechanic's lien for materials furnished for a structure, it must appear that the materials were actually used and consumed in the construction. *Robinson* v. *Crotwell Bros. Lbr. Co.* (Ala.), 52 So. 733; *Silvester* v. *Coe Quartz Min. Co.*, 80 Cal. 510, 22 Pac. 217; *Bewick* v. *Muser*, 83 Cal. 368, 23 Pac. 389; *Chaplin* v. *Pesse & B. Paper Works*, 30 Conn. 461, 71 Am. Dec. 263; *Potter Mfg. Co.* v. *Mayers & Co.*, 171 Ind. 513, 131 A. S. R. 268, 86 N. E. 837; *Luper* v. *Mayers*, 10 Ind. App. 314, 37 N. E. 1070; *Rice* v. *Hodge*, 726 Kan. 164; *Hill* v. *Bowers*, 45 Kan. 592, 26 Pac. 13; *McGany* v. *Averill*, 50 Kan. 362, 34 A. S. R. 120, 31 Pac. 1082; *Consolidated Eng. Co.* v. *Crawley*, 105 La. 615, 30 So. 222; *Smalley* v. *Gearing*, 121 Mich. 557, 108 N. W. 285; *Missoula Merc. Co.* v. *O'Donnell*, 24 Mont. 65, 75, 60 Pac. 594, 991.

III. *The claim of Galtney Motor Co. should have been disallowed in toto.* There is a claim of thirty-six dollars for repairs on a tractor and for rent of tractor, one hundred dollars. *State for use of Gwyns-Falls Quarry Co.* v. *Nat'l Surety Co.*, 128 Atl. ——; *Pierce Oil Corp.* v. *Parker* (Ark.), 270 S. W. ——.

We approve generally and apply the rules of separation of items as stated by Judge Webb in *U. S. for use of Thomas Laughlin Co.* v. *Morgan* (C. C.), 111 Fed. 474, 488 (*certiorari* denied 241 U. S. 670, 60 L. Ed. 1230). See, also, *Empire State Surety Co.* v. *Des Moines*, 131 N. W. 870; *Standard Boiler Works* v. *Nat'l Surety Co.* (Wash.), 43 L. R. A. 162; *Kansas City* v. *Youmans*, 213 Mo. 151, 112 S. W. 225; *Basshor* v. *Baltimore, etc., R. R. Co.*, 65 Md. 99, 3 Atl. 285.

IV. *The claim of Taylor & Haynie for groceries, cigarettes, overalls, shirts, and cash should have been disallowed.* *Watkins* v. *U. S. F. & G. Co.*, 103 So. 224; *Central Trust Co.* v. *Texas, etc., R. R. Co.* (C. C.), 27 Fed. 178; *Standard Oil Co.* v. *Lane*, 75 Wis. 636, 44 N. W. 644,

7 L. R. A. 191; *Newgrass v. Atlantic, etc., Ry. Co.* (C. C.), 56 Fed. 676; *Giant Powder Co.* v. *Oregon, etc., Ry. Co.* (C. C.), 42 Fed. 470, 8 L. R. A. 700; *Winslow* v. *Urquhart,* 39 Wis. 269.

V. *The claim of J. D. Biggers Hdw. Co. should have been disallowed.* This claim consists of many various and sundry items such as cement, single trees, hammers, sledge-hammers, whips, log chains, files, plastering trowel, hand axes, saws, emery wheel, oil stoves, bolts, monkey wrenches, bridles, bridle bits, pocket knives, pencils, hair clippers, padlock hinges, nails, paint brushes, rules, water bucket, water dippers, pliers, horseshoes, horseshoe nails, washers, buggy lines, wagon lines, skillets, knives and forks, teaspoons, coffee pots, lamps, dish pans, rivets, staples, solder, steel brushes, hay wire, chalk line, tractor wheel, phone calls, roller bearings, garden forks, chisels, grass rope, stovepipe joints, and steel wheelbarrows. The total amount of this account was two thousand seven hundred ninety-one dollars and forty-nine cents.

In order for this judgment to be sustained, the statute has got to be so broadened that it will cover shop, tools, and kitchen utensils, contractor's equipment, and bolts used for the repairs of trucks, locks for the safe-keeping of groceries, coal oil for supplying light at night for the dusky laborers to see by.

Tools, implements, and appliances which do not enter into and form a part of the complete project cannot be allowed. *Heltzel Steel Form & Iron Co.* v. *Fidelity & Deposit Co.* (Ark.), 271 S. W. 325; 65 Ins. Law Journal, page 582; *Nat'l Surety Co.* v. *U. S.,* 228 Fed. 577, 143 C. C. A., 99 L. R. A. 1917A 336.

We approve generally and apply the rules of separation of items as stated by Judge Webb *in U. S. for use of Thomas Laughlin Co.* v. *Morgan* (C. C.), 111 Fed. 474, 488 (*certiorari* denied, 241 U. S. 670, 60 L. Ed. 1230). See, also, *Empire State Surety Co.* v. *City of Des Moines,*

131 N. W. 870; *Standard Boiler Works* v. *Nat'l Surety Co.* (Wash.), 43 L. R. A. 162; *Kansas City* v. *Youmans,* 213 Mo. 151, 112 S. W. 225; *U. S. for use of Chapman* v. *City Trust and Surety Co.,* 23 App. D. C. 153; *Thomas Hdw. Co.* v. *McConnell* (Ala.), 14 So. 768; *Stinson* v. *Los Angeles Construction Co.* (Cal.), 74 Pac. 357. In *U. S. F. & G. Co.* v. *California Co.* (Ariz.), 186 Pac. 502, the court held that the material must actually enter into the work. See likewise *Farmers Irrigation Co.* v. *Mann* (Colo.), 135 Pac. —; *Waters-Pierce Oil Corp.* v. *U. S. & Mexican Tr. Co.* (Texas), 99 S. W. 212; *Beals* v. *Fidelity & Deposit Co.,* 78 N. Y. Supp. 584.

VI. *The claim of the Corinth Furniture Company for furniture in the sum of one hundred five dollars and fifty cents cannot be lawfully allowed.* It is so far-fetched to try and construe the statute as covering household goods that it goes even further than classing equipment such as road machines and pile drivers as material necessary for the construction of the road. The court properly excluded this item.

*W. C. Sweat,* for appellees.

I. In the matter of W. G. Kimmons & Sons, which is the first and largest claim, the suit was for feed, oil, coal, gasoline and two truck casings. It is shown by the testimony of Mr. Abernathy of the firm of Abernathy & Lee, sub-contractors, that all of this feed was fed to mules that were working on the job, and that they worked nowhere else except on that road; that all of the coal which they bought was used in the steam-roller that was used in rolling the sub-grade of the road and the gravel; that the oil which they bought was used in tractors, roller, truck, and one car, all of which was used exclusively in the construction of the road. All of these items were for "material used in the work and such as would necessarily be consumed in the work, and was fur-

nished to the contractors in the course of the performance of the work." *U. S. F. & G. Co.* v. *Yazoo County,* 110 So. 780; *Standard Oil Co.* v. *Nat'l Surety Co.,* 107 So. 559.

There are only two items of this account about which there is any question at all under the holding of the court in *U. S. F. & G. Co.* v. *Yazoo County, supra,* and that is the two items of twenty-five dollars each, for automobile tire and tube. It is shown that these were entirely worn out in the work, yet if it should be held that these items were not properly allowed, I call the court's attention to the fact that no interest was allowed in the judgment on any item of this account up to the date of the last item. The petitioner would, of course, be entitled to the interest at six per cent, and this interest amounts to practically enough to take care of these two items.

II. *The claim of the Service Lumber Company.* This is an account for lumber which was used in making concrete forms for the concrete bridges and the concrete culverts that were used on this road. This lumber was an absolute necessity. In the strictest sense of the word, it was not actually consumed; but in the true sense, as contemplated by the statute and the bond, it was consumed. When this lumber was once made up into forms for the concrete, its value was practically destroyed.

There is nothing definite on which the court could base an opinion that this lumber had, in fact, any value at all after it had been used where it was located.

III. *Claim of Taylor & Haynie.* Taylor & Haynie were merchants at Glens. The sub-contractors had a camp near them, which they ran for the purpose of boarding their hands. It was necessary for them to have this camp as these laborers were negroes and there was no place in the community where they could board. Taylor & Haynie first furnished the sub-contractors groceries which were used by them exclusively at this camp. The

sub-contractors paid the negroes who worked for them so much per day and board. They did not run a commissary, as was done in the case of *Watkins et al.* v. *U. S. F. & G. Co.*, 138 Miss. 388, 103 So. 22. All of the groceries were used to board the hands in this camp and were, therefore, materials furnished in the course of the performance of the work. They were just as necessary and just as much supplies used in the construction of the road as was the feed for the contractor's mules, the coal for his engine, or oil and grease for his tractors. *Standard Oil Co.* v. *Nat'l Surety Co.*, 107 So. 559; *Watkins et al.* v. *U. S. F. & G. Co.*, 138 Miss. 388, 103 So. 224. None of them were sold to other people for a profit, or otherwise.

IV.  *Claim of the Galtney Motor Company.* This is based on an account for the use of a tractor which was rented in the course of the construction of the road. The appellants contend that this claim should not be allowed for the reason that it is rental on a machine and is not covered by the contract. We think that this rental comes clearly within the contemplation of the contract and bond as being for material necessarily used in the course of the performance of the work. *Illinois Surety Co.* v. *John Davis Co.*, 61 L. Ed. 1206, 224 U. S. 376, 37 Sup. Ct. 614; *Title Guaranty & Tr. Co.* v. *Crane Co.*, 219 U. S. 24, 55 L. Ed. 72, 31 Sup. Ct. 140.

V.  *The Corinth Furniture Company's claim.* This claim was for camp equipment, such as beds, pillows, springs, mattresses, etc., which was furnished by it to the sub-contractors. It appears that under the opinion of the court in *U. S. F. & G. Co.* v. *Yazoo County, for use of Ring,* 110 So. 780, the Corinth Furniture Company will be unable to recover; and that the court below is correct in holding that this camp equipment could not properly be brought within the contemplation of the contract and bond.

*Ely B. Mitchell,* for interpleader, J. D. Biggers Hardware Company.

The only issue in which we are interested is whether or not the items included in the J. D. Biggers Hardware Company account were used in the construction of the road. Abernathy, a witness for plaintiff, testified that everything bought from J. D. Biggers Hardware Company was bought for this road, and was used in the building of the road. According to *U. S. F. & G. Co.* v. *Yazoo County, for use of Rings,* 110 So. 780, there are a good many items in the Biggers Hardware Company account bought by the sub-contractors which the principal and the sureties on their bond could not be held liable for.

"Payments made on account, neither party applying them to any particular item, should be applied to the oldest item." *Duffey* v. *Kilroe,* 76 So. 681; *Fletcher* v. *Gillin,* 62 Miss. 8. Applying the entire amount paid to the oldest items of the account after July 28, 1924, the material actually furnished by J. D. Biggers Hardware Company that went into the construction of the road amounted to four hundred thirty-two dollars and ninety-four cents plus fifteen per cent attorney's fee, sixty-four dollars and ninety-three cents, making the amount due four hundred ninety-seven dollars and eighty-seven cents, and there is no doubt that this court should enter judgment in favor of the plaintiff.

I admit that some of the items in the account of J. D. Biggers Hardware Company sued on in this case, such as single trees, anvils, scoops, wheelbarrows, stoves, drawing knives, and such tools, were bought by the contractor to keep his construction outfit in proper repair. But there are other items such as bolts, nails, paint brushes, paint, wire brushes, dynamite fuse, mule shoes, coal, cup grease, hame strings, and wagon lines, which may or may not have been used up completely in the construction of the said road. On all of these doubtful items it was a question of fact for the court to pass on as a

jury to say whether or not they were used in the construction of the road.

The judgment of the court or in this case the verdict of the jury based upon evidence which is not controverted will have to be upheld by this court.

Since Abernathy did not instruct Biggers Hardware Company where the payments should be applied, since Biggers Hardware Company applied them to the oldest items, since it is a question of fact as to whether or not some of the articles went into the construction of the road, and this question of fact was decided in favor of the appellee, it necessarily follows that this court will not disturb the judgment of the court below.

Argued orally by *W. C. Sweat,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

This suit was brought by W. G. Kimmons & Sons against McElrath & Rogers, original contractors, Abernathy & Lee, their subcontractors, and the United States Fidelity & Guaranty Company, sureties on the bond of the original contractor, McElrath & Rogers, for materials, etc., furnished the subcontractors in the construction of a certain part of a public road in Alcorn county. In September, 1923, McElrath & Rogers entered into a contract with the board of supervisors of Alcorn county for the construction of a road leading east from Corinth, Miss., known as the federal aid project No. 149, and gave bond for the faithful performance of their contract with the United States Fidelity & Guaranty Company, as sureties. McElrath & Rogers sublet the work to Abernathy & Lee, who performed the work.

The account of W. G. Kimmons & Sons was principally for feed for mules used in the construction of the road. There were some items of coal, which were used in the roller, and some oil and gasoline that were used in the tractor and trucks. The other complainants intervened

as petitioners, and set up their various claims for materials and supplies furnished Abernathy & Lee, and their labor in the performance of the work. These accounts will be separately referred to hereafter.

When the cause came on, there was first a motion for a change of venue to Grenada county, which was overruled; then a motion to transfer to the chancery court, which was likewise overruled. Subsequently an agreement was entered into between the parties that due publication had been made under the statute, and that the cause would be heard in vacation before the circuit judge without a jury; and the cause was continued for trial before such judge, and thereafter trial before him in vacation. Judgment was rendered for W. G. Kimmons & Sons for their claim in full; the Service Lumber Company, for its claim in full; the Galtney Motor Company, for its claim in full; and for Taylor & Haynie, for its account less items of Coca-Cola, candy, cigarettes, and tobacco. The claim of the Corinth Furniture Company was denied in full, and W. G. Kimmons & Sons were allowed ten per cent. attorney's fees, and the other petitioners fifteen per cent. McElrath & Rogers having appealed from a judgment rendered against them, the Corinth Furniture Company appeals from the judgment disallowing its claims, and W. G. Kimmons & Sons cross-appeal on the question of attorney's fees, contending that they should have been allowed fifteen per cent. instead of ten per cent. The cause of action arises under chapter 217, Laws of 1918.

We think the contentions of the appellants McElrath & Rogers, as to the change of venue and the giving of notice in matters of that kind, are without merit, because suit was properly brought in Alcorn county where an agent of the surety company was served with process. The question of notice and rights involved in the absence of petition is waived by the agreement entered into.

Before taking up the various claims, it will be well to state the general principles governing the case. The

items in the various accounts will be governed by the principles so stated, and will be hereafter taken up and considered.

In the case of the *United States Fidelity & Guaranty Co.* v. *Yazoo County, for Use of Rings et al.* — Miss. —, 110 So. 780, the court considered the question as to what the bond involved, under chapter 217, Laws of 1918, covered, and in the course of the opinion the court said:

"The statute which requires the bond of a contractor for public work to be conditioned for the payment for all materials used in the work, and provides that any person furnishing materials used in such work may maintain an action on such bond, is designed for the protection of those who furnish materials which either enter into and become a permanent part of the improvement, or which are naturally and necessarily consumed in the course of the performance of the work, and it was not intended to protect those who furnish the contractor's plant and equipment or who furnish the material necessary to keep such equipment upon an efficient basis. In determining the liability of the surety for such articles or equipment, the fact that they were partially or totally worn out, or consumed, on the particular work is not the test of the liability of the surety. If the contract is sufficiently large, covering a long period, the heaviest machinery, such as steam shovels and dredging machines, costing many thousands of dollars, may be entirely worn out, but we know of no case holding that the surety would be liable for the purchase price of such equipment. If the surety should be held to be liable for the plant or equipment of the contractor because the same is worn out or rendered valueless on the work, then it necessarily follows that the surety must be held liable for the depreciation in the value of the machinery and equipment which is caused by its use on the work, for, to the extent of the depreciation caused by such use, the equipment has been consumed in that work. In such a case, the court would be required to determine, as the court below did in the case at bar, the value of such equipment

when the work was finished and the amount of depreciation in such equipment caused by the use on the particular work. We do not think such is the intention or meaning of the statute requiring this bond."

In the case of *Oliver Construction Co.* v. *Crawford,* 142 Miss. 490, 107 So. 877, this court held that, under chapter 217, Laws of 1918, making a contractor on his bond liable to all persons supplying labor or material in the construction of work contracted for, the contractor is not liable on his bond for money so loaned to a subcontractor, which is used in paying for material or labor; that, while the statute was to be given a liberal interpretation, it would not extend beyond the clear meaning of the terms used by the legislature. It will be seen from these decisions that the law does not extend to the equipment necessary to perform the work, which the contractor is expected to have for the performance of the work under contract, nor to repairs to the equipment, nor does it extend to money loaned to a subcontractor with which to pay for labor and materials. In the case of *Standard Oil Co.* v. *National Surety Co. et al.,* 143 Miss. 841, 107 So. 559, it was held that oil and gasoline furnished a contractor for use in operating machinery used by him in digging canals and ditches for a drainage district are materials used in the prosecution of the work within the meaning of section 1, chapter 217, Laws of 1918. With these principles in mind, we shall proceed to the consideration of the several accounts.

The account of W. G. Kimmons & Sons, as stated above, is made up principally of feed for mules used while working on the construction of the road under contract, and oil, coal, and gasoline used in operating the machinery to perform such contract. Under the rule announced in *Standard Oil Co.* v. *National Surety Co. et al.,* 143 Miss. 841, 107 So. 559, the feed for the mules and the coal, gasoline, and oil used in operating the machinery to perform such contract were proper allowances. In the account, however, there are two charges of twenty-

five dollars each, for two tires and tubes, making a total of fifty dollars, which do not come within the principles herein announced, because both of these items were for the repair of the equipment used by the contractor in the performance of his work, and are controlled by the quotation, above given in the case of the *United States Fidelity & Guaranty Co.* v. *Yazoo County, for Use of Rings et al.,* 145 Miss. 378, 110 So. 780. It is said by the appellants that, should these items be found to be improperly allowed, nevertheless the judgment ought to be affirmed because the court only allowed ten per cent. attorney's fees, whereas, under the proof, they should have been allowed fifteen per cent.; that, if the court had allowed the interest, which it did not allow, it would have more than offset these two items. We think the court's allowance of the attorney's fees was proper, and, in making such allowance, it is not controlled entirely by the opinion of the witnesses as to what would be a reasonable attorney's fee. The trial judge necessarily has had much experience in passing upon these propositions, and, in questions of value, the opinions of witnesses are not entirely controlling, but many things, including the amount involved, the course of litigation, the general conditions of the country, and the general financial condition in his district, are all to be considered in reaching the conclusion of value of an attorney's service in proper litigation. We do not think the interest claimed is maintainable in the present suit. The judgment in favor of W. G. Kimmons & Sons will therefore be reversed as to the two items aggregating fifty dollars, and this amount will be deducted from the judgment rendered by the circuit judge, and the ten per cent. attorney's fee will be calculated upon that amount rather than the amount which the judge calculated the ten per cent. on in his judgment; and judgment will be here rendered for W. G. Kimmons & Sons for the proper amount in accordance with these views.

The judgment of the court below in favor of the Service Lumber Company will be affirmed, because the forms required for making concrete bridges and concrete culverts are not shown in the proof to be of any definite value. The lumber is necessary, of course, for modelling forms to be used in concrete work. If this lumber has a value after such use—that value should be deducted from the liability of the surety. The facts in the present case show that the contractors who bought and used the lumber had no further use for it, and that it was thrown aside and abandoned as being worthless. If it had any value, that is a matter which should have been proved in the case. In many cases these forms could be used on more than one job, where such separate jobs were contiguous and such lumber could be moved from point to point with small expense. In the present case, the contractors moved for quite a distance, and the expense of moving the lumber would have been greater than its value, if it had any real value.

The claim of Taylor & Haynie is a long account, and consists mainly of groceries furnished the subcontractors for a camp nearby, which they ran for the purpose of boarding their hands. The contract between the contractors and laborers was for so much per day and board. The proof showed that there were no negroes with whom the negro laborers could obtain board, and it was necessary, in order to perform the contract, to maintain a place at which they could be fed; their board being a part of their compensation for the work. Ordinarily, supplies for a camp or a commissary would not be allowed, but, under some conditions, it is proper to allow the actual cost of the board furnished the laborers as a part of their compensation. The account also includes other items such as cigarettes, Coca-Cola, money borrowed, and clothing sold to these laborers by different people. The judge deducted the cigarettes, tobacco, candy, and Coca-Cola, amounting to only about three dollars and eighty cents, and allowed the other items.

Among these other items were shirts, overalls, cash to negro laborers, and personal accounts of the laborers. We have checked the items, and find that the amount which should be allowed, in addition to what the trial judge deducted, was forty-six dollars and sixty cents. The judgment of the trial judge will therefore be reversed, and a judgment rendered here for the amount rendered by him less forty-six dollars and sixty cents, and the attorney's fees allowed by him will be calculated on the new allowance.

The claim of the Galtney Motor Company was for rent for the use of a tractor in the construction of the road, and for repairs necessary to make it as good at the end of the work as it was at the beginning. The contract between the Galtney Motor Company and the subcontractors was that the tractor would be rented for five dollars per day, and would be redelivered in as good condition as it was when first received, and the claim of the company was for these two items, which the circuit judge allowed. We think this item was clearly for equipment, and that neither the rent nor repairs are properly allowable against the original contractors. It is, of course, a valid contract as to the subcontractors, as were all the other items allowed against them by the circuit judge. This judgment will therefore be reversed as to the appellants, and a judgment entered disallowing the claim.

The claim of the Corinth Furniture Company was for the equipment of the camp. It was disallowed by the circuit judge, and we think properly so. The judgment of the circuit judge, disallowing this claim against the appellants, therefore is affirmed.

The claim of J. D. Biggers Hardware Company embraces many items, a number of which are allowable and a number of which are not. A great part of the account is made up of material for the repair of the equipment, and, under the principles above stated, is not allowable. Some of the items embraced in the account will have to be determined from more proof than is contained in the·

record. The judgment of the circuit court will therefore be reversed as to the account of J. D. Biggers Hardware Company, and the cause remanded for further proceedings, in which the items may be properly separated, and allowed or disallowed, as they are for equipment or for the construction work in accordance with the principles above announced.

It follows from what we have said the judgment of the court below will be affirmed in part, and reversed in part.

*Affirmed in part, and reversed in part.*

## On Suggestion of Error.

Suggestions of error have been filed by both the appellants and the appellees to the opinion heretofore rendered in this case.

On behalf of appellants it is urged that we erred in holding the contract binding and the principal contractor liable for the feed for the mules used in the work during the performance of the work. The appellants undertook to draw a distinction between feed for animals used in the performance of work, and supplies, such as coal, gasoline, and oil for machinery used in the work. It is argued that the contractor or subcontractor would have to feed the mules at all events in order to keep them alive, and whether they were or were not at work, whereas machinery, when not in use, would not have to be supplied with fuel, etc. This distinction, we think, cannot be safely made, and whatever doubt may have existed as an original proposition we think is removed by the prior decisions of this court referred to in the main opinion.

There is conflict of authority in other states, but we think our state, in the opinions referred to, adopted the philosophy of the main opinion, and following these decisions necessarily leads to the announcement made in the main opinion.

On behalf of the appellee it is urged that payments made by the subcontractor on the accounts of the several

appellees should have been credited to the first items of such accounts; that, if this was done, it would result in the granting the amounts allowed in the circuit court.

In the suggestion of error filed by J. D. Biggers Hardware Company it is stated that, if payments made were allowed and applied to the first items of the account, it would be willing to take the balance remaining, about which there is no dispute, and have judgment rendered here accordingly.

While it is true that ordinarily payments made on an account will be applied to the oldest item or items of the account, this is not true where the money paid is derived from a particular source or fund, and where a part of the account is properly payable out of such fund. In such case the payment will be applied to the payment of items payable out of the particular fund whether such items be the oldest items in the account or not. In 21 R. C. L. at page 97, section 103, it is stated that:

"Another limitation put on the power of the creditor to apply payments is that where money is derived from a particular source or fund it must be applied to the relief of the source or fund from which it was derived. Hence when money is derived from a foreclosure sale of property given to secure the payment of a particular debt it must be applied in extinguishment of that claim without any direction from the debtor. However, a mortgagor, if he sees proper, may consent to adopt or ratify an unauthorized application of payment made by his mortgagee creditor of the proceeds of mortgaged property to an unsecured debt. Whether the mortgagor has consented to either is a question of fact to be determined by the jury, and the burden is on the mortgagee, in either case, reasonably to satisfy the jury of such consent or ratification. But the rules which bind the mortgagee who sells on foreclosures, or takes possession of and sells and converts the security, have little application to a case where the payment is made from money obtained by a voluntary sale by the mortgagor. In the latter case the

lien of the mortgage does not follow or attach to the money, and the mortgagee has no recourse on any other person to whom such moneys may be paid. In the hands of the mortgagor they have no character different from moneys derived from a wholly different source; and when paid over to the mortgagee in the absence of agreement or direction as to their application, the latter has the right to credit them on the unsecured debt without regard to the source from which they were obtained by the debtor.''

The moneys paid upon the account were derived from moneys paid on the contract, and, we think, should be applied first to the payment of the items properly chargeable against the account where a creditor has an account made up of items furnished to the contractor for the work proper and items furnished the contractor which did not go into the work or were not directly connected therewith.

It follows from what we have said that the suggestions of error, both for the appellant and the appellee, must be overruled.

*Overruled.*

