

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-2463
Re: Purchase of supplies
and repairs for brick
plant out of Industrial
Revolving Fund for Texas
Prison System.

In your letter of June 18, 1940, you call our atten-
tion to the provisions of H. B. 78, 44th Leg., being Ch. 403,
p. 1600, Acts 1st C. S., 44th Leg., and request our opinion
as to whether the Prison Board may purchase supplies and re-
pairs for the Texas Prison System's brick plant and pay for
the same out of the revolving fund created by said H. B. 78.
You advise that the Prison System owns, operates and main-
tains the brick plant, producing bricks used in the Prison
System only, not selling or delivering bricks to other State
institutions, nor to anyone else.

The act in question created the Industrial Revolving
Fund of the Texas Prison System in the amount of $50,000.00
"to be used by said Prison System in the purchasing of sup-
plies and materials for tag plant, shoe and print shop and
other industries and delivery of finished products as provid-
ed in the General Appropriation Bill for said System. . ."

From your Mr. Farrar we understand that the question
arises principally from the fact that the brick plant does
not sell any of its products and consequently earns no in-
come from which the revolving fund may be replenished. There
can be no question but that the brick plant is an industry,
subject to the benefits of the Act. Furthermore, it is
equally clear to us that the legislature had no intention of
limiting the use of the funds to the purchase of supplies

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George Sheppard, page 2

and materials for such industries as should be able to produce an income out of which expenditures from the fund could be reimbursed. After all, the operation of the whole Prison System is State's business, and it would be just as much to the State's interest to be able to get the advantage of cash purchase of supplies and materials for an industry which supplies the Prison System only with its products and consequently shows no income, as to make such purchases for an industry which sells to other State institutions or others and has an income. There would be poor reason for making a distinction and the Act does not attempt to do so. It is our opinion, therefore, that said revolving fund may be used in the purchase of supplies and materials for the brick plant.

You will note, however, that the Act authorizes only the purchase of supplies and materials, not "supplies and repairs." In our opinion it was contemplated that only those supplies and materials consumed in the operation of the various industries might be paid for out of the revolving fund. As applied to the brick plant, this would include such things as the raw materials going into the brick. Traveler's Ins. Co. vs. Village of Ilion, 213 N. Y. S. 206; Standard Oil Co. vs. Detroit Fidelity and Surety Co., 157 N. W. 418, Ohio; So. Surety Co. vs. Metropolitan Sewerage Commission, 201 N. W. 980, Wis; Commonwealth vs. National Surety Co., 97 A. 1034, Pa; Royal Ind. Co. vs. Day & M. Co., 150 N. E. 426, 44 A. L. R. 374, Ohio; Am. Ind. Co. vs. Burrows Hdw. Co., 191 S. W. 574; 60 C. J. 1166-68; 39 C. J. 1385; Jenkins Hdw. Co., vs. Globe Ind. Co., 170 S. E. 643, N. C. We think fuel oils and gas used in manufacturing the brick would also be included in the term. Smith vs. Oasting, 203 N. W. 131, Mich; Overman and Co., vs. Maryland Cas. Co., 136 S. E. 250, N. C.; Standard Oil Co., vs. National Surety Co., 107 So. 559, Miss.

The word "repairs" has a different meaning generally from either of the words used in the Act. Ordinarily it means a replacement or mending. See 54 C. J. 396. The making of repairs may involve a labor cost. As applied to the brick plant, it may include certain materials, but such will not be

Honorable George H. Sheppard, page 3

materials used or consumed in the operation of the industry, the meaning which a reading of the Act as a whole convinces us was intended to be given the word "material." The authorities cited deal with contractor's bonds and materialmen's liens and are of limited application but they do show at least the difference in meaning which the word may have. The current Appropriation Act, Ch. 6, p. 7 (at p. 180), Acts 46th Leg., carries an appropriation for "construction materials and supplies," one for "machine shop materials and supplies," and one for "shoe shop materials and supplies," another one for "General Support and Maintenance;" the 1937 appropriation bill contained similar provisions. Acts 1937, p. 1454. Furthermore, it would seem that the need to be met by the Act creating the revolving fund was more pronounced as to supplies and materials consumed in the operation of the various industries of the Prison System than as to materials used in repairing the plants. And, it is also thought that no greater saving could be effected in making cash purchases of materials for making repairs in prison industries than with respect to materials used in repairing other permanent buildings, and improvements belonging to the State.

Our answer to your question is that supplies and materials used by the brick plant may be paid for out of the revolving fund, but that repairs to the plant may not be so paid.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Glenn R. Lewis_
Glenn R. Lewis
Assistant

GRL:EP

APPROVED JUN 27, 1940

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS



APPROVED OPINION COMMITTEE BY BWB CHAIRMAN