## CASKY, ET AL. V. HAVILAND, RISLEY & Co.

1. It is not necessary, in a notice to a sheriff, that a motion will be made against him for a neglect of duty, to alledge that his official character continued, up to the time when a *fieri facias* placed in his hands was returnable.

2. The forms of returns to be made to process, as prescribed by statute, are not exclusive of all others, expressing the same meaning. A return of a sheriff to an execution, which states a levy and sale of certain lands, and the appropriation of the proceeds to older executions, but which does not affirm, that the defendant had no other property from which the residue of the execution can be satisfied, is substantially defective.

3. The refusal of a court, pending a motion against the sheriff, to permit him to amend his return, cannot be assigned as error in the judgment upon the motion. If the party is prejudiced by the refusal, the remedy is by mandamus.

4. A judgment will not be reversed because a charge, legal in itself, may not be sufficiently full, or is calculated to mislead the jury; but additional or explanatory charges should be moved for.

5. It is not the duty of the sheriff to return the execution to any one but the clerk, or his deputies; but must use all reasonable diligence, to make a due return to the clerk.

6. When the declarations of a sheriff constitute a part of his acts, they are admissible as part of the *res gestae* against his sureties.

7. It is not necessary in a motion against the sheriff and his sureties, for neglect of duty of the former, that the jury should be satisfied beyond a reasonable doubt, that the plaintiff's case, or the defence has been made out. All that is necessary, is, that there should be such a preponderance of proof as will convince the judgment, by the application of the ordinary tests of truth.

Writ of Error to the County Court of Randolph.

In the transcript, there is a notice addressed to Robert Casky, late sheriff of Randolph, informing him that during the term of the county court of Randolph county to be holden on the fourth Monday of July, 1846, the defendants in error would move for judgment under the act of 1819, against him and the sureties in his official bond, as sheriff of Ran-

dolph, for the amount of a *fieri facias* issued from that court in favor of the plaintiff in the motion against John Gooden and Lawson B. McKee, for the sum of $305 81 damages, and the sum of $13 43¾ costs; which *fi. fa.* is tested of the 11th March, 1845, and was placed in the hands of Casky on the 25th of the same month—he being then sheriff, to be executed and returned according to law.   The notice is dated the 8th of July, 1846, and alledges that the *fi. fa.* therein described was returnable to the county court of Randolph, on the fourth Monday of July, 1845, and that Casky had failed to return the same according to law.

At the term of the court when the notice indicated that the motion would be made, the parties appeared, and the defendant moved the court to quash the notice for defects apparent on its face, which motion was overruled.

In the transcript, it is stated that the defendant, Casky, demurred to the notice, and the plaintiffs joined therein; the judgment entry takes no notice of the action of the court thereon, but the bill of exceptions states that the demurrer was overruled.   Issue was taken upon the notice and submitted to a jury, who returned a verdict for the plaintiff, and judgment was thereon rendered against the sheriff, and the persons who were shown to be his sureties.

From a bill of exceptions, sealed at the instance of the defendants, it appears that the plaintiffs offered in evidence the *fieri facias* described in their notice, and proved that the defendant, Casky, was sheriff of Randolph when it was placed in his hands, and also when it was returnable.   This defendant however objected to evidence of the fact that he was sheriff after the reception of the execution, on the ground that there was no averment in the notice to authorize it, but the objection was overruled, and the defendant excepted.

Plaintiffs then offered to prove the declarations of Casky, made in the absence of his sureties; to the admission of this evidence the defendants objected, but their objection was overruled, and proof of the declarations admitted.

The defence relied on was, that the deputy in whose hands the execution was placed, went to the office of the clerk for the purpose of returning the same, either a few days before it was returnable, or on the day of its return;

that the clerk was absent, the office closed, and neither him-
self or deputy could be found.    Thereupon a witness was
offered, who stated, that in the summer of 1845, and a few
days before the sitting of the court, according to witnesses
best recollection, (but he could not state the precise time,) he
saw the deputy referred to, at the court house, who inquired
of him where the clerk was, or any person who was doing
business for him, and the deputy also informed witness that
he wished to return to the office of the clerk some papers
then in his hands, but could not find any person to receive
them.    Witness could not identify the execution in question,
or state whether it was mentioned by the deputy.    To re-
but this testimony, the plaintiffs proved by the clerk, that
on Wednesday, Thursday and Friday before the court was
holden, that he (the clerk) was in town, and the most of the
time in his office.    It was also shown, that the clerk was
absent from home, from some time in May up to the Tues-
day night before the court was holden, and that he had no
sworn deputy; but in his absence one W. H. Cunningham
was in the habit of doing business for him.    During the ab-
sence of the clerk, Cunningham was occasionally absent;
when this occurred, the key of the office was left with J.
Benton, or A. J. Hamilton—and at such times they occa-
sionally attended to the business of the office.    But there
was no proof that either of these persons were known to the
deputy as such representative of the clerk.

The defendant's counsel prayed the court to charge the
jury as follows: 1. That they must be satisfied beyond a
reasonable doubt, that the defendant failed to return the *fieri
facias* in question, and that he had no reasonable excuse for
such failure, or else they must find for the defendant.    This
charge was refused, and the jury were instructed, that it de-
volved upon the plaintiffs to satisfy them beyond a reasonable
doubt of the failure to return, and that the defendant was she-
riff; that if this was shown, it then devolved upon the de-
fendant to show that he had a reasonable excuse; and that
the question of a reasonable doubt did not arise on the ex-
cuse, although the statute under which the recovery was
sought was highly penal.

2. That if they believed that the failure to return did not

occur in consequence of neglect or other improper motive on the part of the officer holding the execution, but was from information that the clerk was absent, whether correct or not, they should find for the defendant. Which charge was also refused.

3. That unless it was averred in the notice that the defendant was sheriff, on the return day of the execution, they could not find for the plaintiffs. This charge was in like manner refused.

Plaintiffs then read to the jury the forms of returns on executions, from Clay's Dig. pages 200 and 201, and prayed the court to charge the jury, that unless one of these returns was indorsed upon the execution in question, they must find for the plaintiffs the amount thereof, with interest. Which was given.

The defendant then prayed the court for leave to amend the return on the execution, so as to correspond with the facts in the case, which was refused by the court.

The jury were then charged, that if the defendant had satisfied them that he had a reasonable excuse for failing to return the execution, their finding should be for the defendant. Thereupon the defendant prayed the court to charge the jury, that the officer was not required to use extraordinary diligence, and that ordinary diligence was all that was required by the law. Which charge was refused, and the jury were instructed, that the court would not undertake to distinguish between ordinary and extraordinary diligence, and that they had been charged as to the sufficiency of the excuse, in the language of the court in the case of Roberts & Battle v. Henry, and that the sufficiency of the excuse was a question for their determination. To all of which charges, and refusals to charge, the defendant excepted, &c.

J. FALKNER, for the plaintiff in error, contended, that it is a general rule in all courts of record, that every thing necessary to make out the plaintiff's case must be averred in the declaration. If this is not done a demurrer will be sustained. In this case it is not averred in the notice, (which is used as the declaration,) that Casky was sheriff at the return

day of the execution, therefore the demurrer should have been sustained. 1 Ala. Rep. N. S. 330.

The charge of the court, that unless one of the returns in Clay's Dig. 200 and 201, was indorsed on the execution was contrary to law, and virtually decided the case in advance of the verdict of the jury. But if this charge was correct, the amendment should have been allowed. 7 Ala. R. 830.

The jury should have been instructed what in law was a sufficient excuse, and charging them in the language of the court in the case of Roberts & Battle v. Henry, 2 S. 42, was not applicable to the case made by the proof.

It was the duty of the court to decide what amounted in law to a sufficient excuse, and then leave it to the jury to determine from the facts in proof, whether such case had been made out or not, leaving the sufficiency of the excuse to their determination, was therefore error. Ordinary diligence is all the law requires from an officer to whom process is entrusted. 2 Ala. R. 43 ; 9 Id. 83.

The case made by the proof, amounted in law to a sufficient excuse for not returning the execution, and the court should so have told the jury, if they believed the evidence to be true. If the charges given are erroneous in the abstract, they were well calculated to mislead the jury.

A return of the execution to any person but the clerk, or a sworn deputy, would have been no return in law.

The declarations of Casky should not have been received, the execution being in the hands of Moore, the deputy. See Dumas & Co. v. Patterson, et al. 9 Ala. R. 484.

L. E. PARSONS, for the defendants in error, made the following points :

1. The notice states, the motion will be made for the amount of a writ of *fieri facias*, and this has been held sufficient to indicate its character. McRae, et al. v. Colclough, 2 Ala. R. 74; Crawford v. Chandler, 5 Ib. 61.

2. The judgment entry will be looked to alone by the court in this case, to determine whether the notice is sufficient; and the facts there disclosed show that it is. The plaintiffs in error do not make it a part of their bill of exceptions, and the notice is no part of the record unless this is

done—at least it cannot be taken to contradict the facts recited in the judgment.    Armstrong v. Robertson, 2 Ala. R. 164; 4 Ib. 516; 1 Stew. 442; 8 Porter, 372; 8 Ib. 99.

3. The statute prescribes the exact terms in which a sheriff's return shall be made.   Clay's Dig. 200 and 201, § 1. And this court has in one or two instances put the question, whether he is not bound to follow it literally.

4. The failure to return according to law being shown, it was the sheriff's duty to show a reasonable excuse for this negligence.   Roberts & Battle v. Henry, 2 Stew. 42.

COLLIER, C. J.—1. We do not perceive any objection to the notice.   It was sufficient to alledge that Casky was sheriff when the *fieri facias* was placed in his hands, without averring the continuance of his official character up to the time when the same was returnable.   If the determination of his office between the periods of the receipt and return of the execution, could have availed any thing in the defence, it devolved upon him to show the fact; and it was not incumbent on the plaintiff to prove the reverse.   This proposition is so entirely consistent with legal analogies, that argument is unnecessary to illustrate it.

2. The act of 1807, (Clay's Dig. 200, *et seq.* § 1,) prescribes the forms of returns to be made by a sheriff or other officer, to a *fieri facias*, and other writs of execution; but these forms have never been considered as exclusive of all others, which express the same meaning.   In Barton v. Lockhart, 2 Stew. & P. Rep. 109, it was held, that the return of "satisfied," on a *fieri facias*, sufficiently indicated that the amount thereof had been received by the sheriff, at a time when it was in full force; and this although the statute return employs terms altogether different.   And in Haden, et al. v. Walker, 5 Ala. Rep. 86, we decided that where a sheriff returned an execution thus, " the defendants in this case have settled with plaintiff's attorney, as *per* order of same— costs and commissions paid to sheriff," the fair inference was, that the execution had been fully satisfied; and that no subsequent execution could issue without the authority of the court in which the judgment was rendered.   It was added, "In respect to *mesne* process, it has been held, that the she-

riff is not confined to the statute form in making his return, but his indorsement upon a writ, that the defendant had acknowledged service, was sufficient to bring the party into court, though the statute requires that a copy of the process shall be left with the defendant. Rowan v. Wallace, Judge, &c. 7 Porter's Rep. 171. No reason occurs to us for a rule less latitudinous in the execution of *final* process; the more especially as in both cases the sheriff is subjected to severe inflictions, either for a false return or the arrogation of power." See 1 Porter's R. 30.

The return in the case before us is not only informal, but it is substantially defective. It states the levy on and sale of certain lands, and the appropriation of the proceeds to older executions; but does not affirm that the defendants have no other property from which the residue of the execution can be satisfied. The statute referred to is explicit in making this latter requisition. Without it, the return is equivalent to stating that "no money is made," which has been adjudged insufficient. Minor's Rep. 48. From this view it follows, that although the county court ruled the law incorrectly, yet as the return is fatally defective, no injury has resulted to the defendants, and the mistake furnishes no warrant for the reversal of the judgment.

3. In respect to the motion by the sheriff to amend the return on the execution, it may well be questioned, whether, if it had been allowed, it could benefit the defence. See 6 Ala. Rep. 172. But be this as it may, its refusal was a matter independent of, and collateral to the judgment in the case at bar, and cannot be revised on error. Kemp & Buckey v. Porter, 6 Ala. Rep. 172, is conclusive on this point, and shows, that if the defendants have been prejudiced by a denial of the motion, the remedy is by *mandamus*.

4. If the defendants had desired the court to inform the jury more particularly, what would have been a sufficient excuse for not returning the execution, they should have prayed specific instructions growing out of, and suggested by the proof. What will constitute such an excuse must depend upon the facts of each case; and to say to the jury, that a sheriff is liable for not returning an execution, unless he has shown an excuse for the failure, is not the reference of a le-

gal question to the jury, or a devolving upon them the appropriate duties of the court.    We have repeatedly held, that a judgment will not be reversed, merely because a charge, legal in itself, may not be sufficiently full, or is calculated to mislead the jury—in such case it is proper to ask an additional or explanatory charge.

5. It certainly was not the duty of the sheriff to return the *fieri facias* to any one else than the clerk or his deputy. As for the persons who occasionally acted for the clerk, he was under no obligation to recognize them.    But he should have used all reasonable diligence to make a due return to the clerk.    Whether this was done is a question depending upon facts, and which must be solved by the jury under the ruling of the court.

6. The declarations of the sheriff were objected to on the ground, that they were made at a time when his sureties and codefendants were not present.    The fact on which the objection was rested, certainly furnishes no exclusive test of the admissibility of such evidence.    Perhaps the declarations constituted a part of the sheriff's acts, in respect to the execution, and were admissible as entering into the *res gestae.* If such were their character, they were competent evidence, and there is nothing in the record to negative such an hypothesis.    See 7 Ala. Rep. 830; 9 Id. 484.    We must then intend, that the ruling of the county court on this point, was conformable to law, as the reverse was not shown.

7. It is not necessary, in a case like the present, that the jury should be satisfied beyond a reasonable doubt, that the facts which make out the plaintiff's case, or defence, have been proved.    All that is necessary, is, that there should be such a preponderance of proof as will convince the judgment, by applying the ordinary tests for the ascertainment of truth. And as for the distinction between diligence ordinary and extraordinary, in the return of an execution by a sheriff, we cannot very well perceive any room for its operation.    But be this as it may, the facts do not show any extraordinary diligence, and as the defendants could not have been prejudiced by the refusal of the county court to charge the jury

41

on this point as prayed, the refusal is not a fatal error. This view is decisive of the case, and the judgment is therefore affirmed.