(132 So. 622)

## UNITED STATES FIDELITY & GUARANTY CO. v. BENSON HARDWARE CO.

4 Div. 510.

Supreme Court of Alabama.

Jan. 22, 1931.

Rehearing Denied March 12, 1931.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellant.

Powell, Albritton & Albritton, A. R. Powell
and Marcus J. Fletcher, all of Andalusia, and
F. D. McArthur, of Birmingham, for appellee.

Kingman C. Shelburne and Bradley Bald-
win, All & White, all of Birmingham, amici
curiæ.

434

FOSTER, J.

The motion to dismiss this appeal presents a question the exact nature of which has not heretofore been considered by this court.

■ But it has been held in this state that two final decrees even in the same case cannot be the subject of one appeal, when the interested parties to each such decree are not the same. Kelly v. Deegan, 111 Ala. 152, 20 So. 378; Wynn v. Tallapoosa County Bank, 168 Ala. 469, 53 So. 228. As a general rule, two separate judgments, decrees, or orders cannot be brought up for appellate review by one appeal, when the parties to the judgment are not the same. Creswell v. Commissioners' Court of Greene County, 24 Ala. 282; Boyett v. Kerr, 7 Ala. 9; Read v. Owen, 9 Port. 180; Jones v. Etheridge, 6 Port. 208; 3 Corpus Juris, 355.

This principle has been held to be applicable to assessments for city improvements. It is said that "two or more distinct judgments or decrees, each of which will support an appeal, cannot be united in one appeal." Decatur Land Co. v. New Decatur, 198 Ala. 293, 73 So. 509. The same language is used in Mobile Imp. & B. Co. v. Stein, 158 Ala. 113, 116, 48 So. 368, 17 Ann. Cas. 288.

In the United States court, it is held that, where in the same action separate judgments are rendered against different parties, each is of such a separate nature as that the aggregate of them cannot be considered the amount in controversy on appeal in determining the jurisdiction of the Supreme Court. It is said to be a joinder of distinct causes of action against distinct parties. This rule has frequent application in admiralty cases, as pointed out in our case of Read v. Owen supra. But it is not confined to admiralty, but has general application, as the following cases will demonstrate: Oliver v. Alexander, 6 Pet. 143, 8 L. Ed. 349; Henderson v. Wadsworth, 115 U. S. 264, 6 S. Ct. 140, 29 L. Ed. 377; Ballard Paving Co. v. Mulford, 100 U. S. 147, 25 L. Ed. 591; Russell v. Stansell, 105 U. S. 303, 26 L. Ed. 989.

In the case of National Surety Co. v. U. S. (C. C. A.) 228 F. 577, L. R. A. 1917A, 336, which was such a case as this, the surety company sued out a writ of error from the United States Circuit Court of Appeals to reverse all the judgments of a District Court in the cause. It appears to have been one proceeding, and the court seems to have so treated it, but reviewed the claims of each separately, and treated them as eleven separate judgments. No objection to the procedure was noted by that court. Some were reversed and some affirmed. One of them, whose judgment was reversed, sued out and obtained a writ of error from the United States Supreme Court, and succeeded in obtaining a reversal of the unfavorable judgment rendered by the Circuit Court of Appeals, not affecting the judgments in favor of the others. This is the case hereinafter referred to of Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776.

We observe that, by virtue of the Highway Code of Alabama, Gen. Acts 1927, p. 356 et seq., a road contractor's bond must be conditioned so that it is liable for labor, material, feedstuffs, and supplies for the work. Only one action may be maintained for such labor and supplies, and any creditor may file his claim in such action and be made a party thereto. Judgments shall be awarded to each such creditor for the amount of his debt so created, but the aggregate cannot exceed the gross liability on the bond, and, if it is more than such liability, the amount of each such judgment shall be a pro rata of the gross liability. It is an equitable remedy such as referred to in National Surety Co. v. Graves, 211 Ala. 533, 101 So. 190, enacted to apply to courts of law in cases of this nature.

■ It seems to us that, if the defendants wish to review all the judgments in such a proceeding, they may do so in a consolidated appeal, for their claim may be that the amount of the aggregate exceeds the liability on the bond. And there is a community of interest between them all on the question of the amount of the total liability. On motion to dismiss the appeal, we are not expected to go through the record to ascertain what the contentions are in this respect. If properly here on such appeal, errors may be assigned as to each judgment separately. As in the Brogan Case, supra, so here, each intervener could have a separate appeal. And on such appeal, though taken separately, but one transcript should be made. We doubt not that the defendants may appeal from any one or more and less than all the judgments. Each separately is thereby treated, leaving unaffected those from which no appeal is taken. By so doing, appellants concede the sufficiency or their gross liability to cover all the claims. So that we think it is optional on the part of the defendants in a suit of this nature to consolidate an appeal from all the judgments, or to appeal from one or more in separate proceedings; but in that event only one transcript will be sent to this court. It will embrace the record pertaining to each judgment from which the appeal was taken. The motion to dismiss the appeal is therefore overruled.

Upon the subject of limitations, urged in argument, we are cited to the construction by the United States Supreme Court of the Federal Act (40 USCA § 270) as authority to the effect that all interventions under the Ala-

bama act (section 28) must be "within sixty days after the complete performance of said contract and final settlement thereof," within which the original action must be brought.

To have a proper understanding of the federal cases based upon the federal act, as authority for a construction of the Alabama act, it is necessary to note the points of similarity in this respect and their differences. The federal act provides that a suit instituted by a creditor of the contractor on the bond must not be commenced "until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract," and that there shall be only one suit, "and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later." The Alabama act provides in this connection for only one action, "and any creditor may file his claim in such action and be made party thereto."

A marked distinction is therefore observed at once, in that the federal act not only places a limitation on the time in which a single action must be begun, but also fixes an express limitation on the time in which the creditors shall intervene. This feature of its provisions is referred to in Fleischmann Co. v. U. S., 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624. The Alabama act places no such limitation on the time in which the intervention shall be made. The federal cases, therefore, which refer to the limitation in which creditors must appear, merely enforce the plain provisions of the federal statute. It is not a matter of construction, for the federal statute is clear in that respect. The language of the Alabama statute resembles the federal act in this connection to such a marked degree that any material variation from it must have significance. The clause in each act is in identical language, except one contains the limitation and the other does not. We find no difficulty, therefore, in concluding that in this respect the two acts have a different meaning. Very properly we think the court may, as it did in this case, fix a time in which such creditors may file their claims extending beyond the period of "sixty days after the complete performance of said contract and final settlement thereof." But both acts use the same language in fixing the time in which action shall be begun, except as to the time limit; that is to say, "after the complete performance of said contract and final settlement thereof." The federal cases have interpreted those words to mean the time when the amount due under the contract is determined by the appropriate administrative authority. Mandel v. U. S., 4 F.(2d) 629 (C. C. A. N. J.); Antrim v. Hannan, 18 F.(2d) 548 (C. C. A. Okl.); U. S. v. Title Guar. & Surety Co., 254 F. 958 (C. C. A. Ill.); Illinois Surety Co. v. U. S., 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609; 40 USCA pp. 100, 101. We consider that interpretation binding on us for the reasons stated in State v. So. Surety Co., 221 Ala. 113, 127 So. 805.

After completion of the work, and on March 30, 1929, the engineers of the state made what is called a final estimate, and this was approved by the chief examiner of accounts and the Governor on April 12th, and on that day the final voucher was issued. Suit was filed April 25th thereafter. This was within "sixty days after the complete performance of said contract and final settlement thereof," even if March 30th was fixed as the date of final settlement—a question not necessary to decide on this appeal.

This court has taken the position that the adoption by the Legislature of Alabama of the act of 1927 is so largely a readoption of the federal act that we are bound by the interpretation which the authoritative decisions of the United States courts had placed upon it, to the extent that there was no material change in it as enacted in Alabama. State v. So. Surety Co., supra. The federal act requires the bond to contain an obligation to make prompt "payments to all persons supplying him or them [that is, the contractor] with labor and materials in the prosecution of the work provided for in such contract." The Alabama act requires that the bond shall be conditioned to "make payment to all persons supplying him or them with labor, material, feed-stuffs or supplies, in the execution of the work provided for in such contract." Section 28. The federal act gives an action or intervention in favor of any person "who has furnished labor or materials used in the construction," etc. The Alabama act gives a right of action or intervention to any person "supplying the contractor with labor, materials, feed-stuffs or supplies."

There appear changes in two respects which seem to need consideration by this court: (a) The added words "feed-stuffs or supplies"; and (b) the omission of the words "used in the construction." We are therefore bound by the construction which the United States courts had put upon those clauses, except to the extent that they are modified by the Alabama act. The United States Supreme Court has held that "labor and materials" include groceries furnished to feed laborers, when, in the absence of other accommodation, it was necessary to maintain them, but not to conduct a boarding house as an independent enterprise. Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. See, also, 46 A. L. R. 513, and McElrath v. Kimmons, 146 Miss. 775, 112 So. 164, 680. A bond under the federal act also includes work done at the quarry, fifty miles

away, and the labor of men who stripped the earth to get at the stone, and carpenters and blacksmiths who repaired the cars in which the stone was carried to the dock for shipment, and of stablemen who fed and drove the horses which moved the cars, United States Fid. & Guar. Co. v. U. S., 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; also amounts paid for the rental of cars, tracks, and other equipment used by the contractor. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; also amounts paid for cartage and towage, for drawings and patterns used by the contractor in making molds for castings, Title Guaranty & T. Co. v. Crane Co., 219 U. S. 24, 31 S. Ct. 140, 55 L. Ed. 72.

In our case of Union Indemnity Co. v. Handley, 220 Ala. 292, 124 So. 876, 877, this court upheld a claim for "food for laborers, feed for mules, clothing * * * furnished to laborers, tobacco, cigarettes, small tools, such as axes, hammers, and pick handles, harness for mules," and other small articles. This may be an enlargement of the state act beyond what the federal court has construed its act to embrace, but the language of the state act uses words which may have a broader meaning. We are not willing at least to disturb the effect of our cases.

We have shown that the federal act, in fixing the obligations of the bond, requires payment to all persons supplying labor and materials in the prosecution of the work. The word "used" is not here employed. The Alabama statute is substantially to the same effect. But, in giving the right of action, the federal statute employs the word "used" and the Alabama statute does not. But there is in the Alabama statute a somewhat different arrangement for setting of the latter clause. It is not set up in the same manner of expression. The particular clause which contains this expression in the federal act has no counterpart in such form in the Alabama statute. The omission of such words does not indicate to us a purpose to create a different meaning. State v. Johnson Contract Co., 120 Or. 633, 253 P. 520. We do not think the words used in the federal act indicate that they were intended to restrict the right of action or intervention within limits except as prescribed by that feature of the act which fixed the obligation of the bond in this respect. In fact, the United States Supreme Court has said that such phraseology is not significant, and refused to limit the act to material directly incorporated into the public work. Brogan v. Nat. Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. See, also, Kidd v. Jacksonville, 97 Fla. 297, 120 So. 556.

Our judgment is that the omission of those words is not of sufficient importance to re-

quire us to depart from a construction of the federal act in this respect by the United States Supreme Court. We have referred to several features of the act which have been construed by such court, and which are material to the facts on this appeal. We have shown that the federal court holds that the material need not enter into or form a part of the structure; but must be consumed in its prosecution.

In the case of Fleischmann v. U. S., supra, it is called the federal materialmen's act. But such act is also held by that court to be subject to a liberal construction, so as to include labor and material supplied to a subcontractor. U. S. for Use of Hill v. Amer. Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Mankin v. U. S., 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315. See our case of State v. So. Surety Co., 221 Ala. 113, 127 So. 805.

It is also said "not to be strictly limited like mechanics' lien statutes, so as to protect only those supplying labor or materials which add to the value of the improvement or structure, nor, on the other hand, should it be extended to claims for labor or materials which only incidentally relate to the prosecution of the work, such as the construction or permanent improvement of the plant or equipment of the contractor, which are capable of use in other work." American Surety Co. v. Lawrenceville (C. C. Me.) 110 F. 717; Title Guaranty & Trust Co. v. Puget Sound, etc. (C. C. A.) 163 F. 168; U. S. to Use of Standard Furniture Co. v. Ætna Indemnity Co., 40 Wash. 87, 82 P. 171; Franzen v. So. Surety Co., 35 Wyo. 15, 246 P. 30, 46 A. L. R. 496. And, while liability on the bond is by the authorities not limited "to such as would be lienable under the mechanics' lien statutes," there are many points of similarity, and many characteristics of the latter apply to the former. Its language in some respects is quite similar. Section 8832, Code. Under this statute, the material must be used in the construction work. Robinson v. Crotwell Bros. Lumber Co., 167 Ala. 566, 52 So. 733; Richardson Lumber Co. v. Howell, 219 Ala. 328, 122 So. 343.

It is not necessary, in order to fix a liability on the bond, that the labor and material, feedstuff and supplies, shall be incorporated in the structure, as is the case to fix a lien for material by statute. This is illustrated in respect to feed for laborers and animals. Brogan v. Nat. Surety Co., supra; Union Indemnity Co. v. Handley, 220 Ala. 292, 124 So. 876; and labor at the quarries—fifty miles away, U. S. Fid. & Guar. Co. v. U. S., supra; and rentals for construction equipment, Illinois Surety Co. v. John Davis Co., supra; Union Indemnity Co. v. State, 218 Ala. 132, 118 So. 148; and for cartage and towage, drawings and

castings, Title Guaranty & T. Co. v. Crane Co., supra; and the use of piling and sway braces used in scaffolding, though abandoned on completion of the job. Union Indemnity Co. v. State, 217 Ala. 35, 114 So. 415; and small articles for use by laborers which contributed to the energy and upkeep of the men employed on the construction, and small tools, axes, hammers, and handles, Union Indemnity Co. v. Handley, 220 Ala. 292, 124 So. 876; 46 A. L. R. 511, such as are not included in a statutory lien for material, May & Thomas v. McConnell, 102 Ala. 577, 14 So. 768.

All materials and supplies purchased, sold, and delivered for use on the project of the nature we have described, and reasonably useful and consumable in the performance of the contract, and in contemplation when it is executed, and fairly within its terms, the court or jury trying the facts may infer are secured by the bond conditioned as provided by law, unless the evidence rebuts the inference. We do not think that the burden is upon the claimant in the first instance to prove by direct evidence that the supplies were used for the job, but that this may be inferred from the circumstances. Portland v. N. E. Casualty Co., 96 Or. 48, 189 P. 211; Red Wing Sewer P. Co. v. Donnelly, 102 Minn. 192, 113 N. W. 1, 120 Am. St. Rep. 619; Bell v. Kirkland, 102 Minn. 213, 226, 113 N. W. 271, 13 L. R. A. (N. S.) 793, 120 Am. St. Rep. 621; Franzen v. So. Surety Co., 35 Wyo. 15, 246 P. 30, 46 A. L. R. 496.

This court has not committed itself otherwise in connection with the materialman's liens. May & Thomas v. McConnell, 102 Ala. 577, 14 So. 768; Robinson v. Crotwell, 167 Ala. 566, 52 So. 733. We know of no case which goes to the extent of requiring the materialman to prove by direct evidence that his supplies sold for a job, and reasonably suitable and appropriate to it, were in fact so used, if this may be inferred from the circumstances. But, if the material is in fact diverted to some other job, and is not used to promote the construction work covered by the bond, this may be shown by the bondsmen, and would defeat a recovery to that extent. State v. Johnson Contract Co., 120 Or. 633, 253 P. 520, 522; Portland v. N. E. Casualty Co., 96 Or. 48, 189 P. 211; Kidd v. Jacksonville, 97 Fla. 297, 120 So. 556.

If the contractor is engaged in several projects under separate contracts and bonds, and the material and supplies are sold indiscriminately without special reference to one or the other job, and they are suitable for use on either, and there is nothing upon which to predicate an inference that they were used on the one or the other, the materialman must otherwise prove that his supplies were so used. Silver v. Harriss, 165 La. 83, 115 So. 376.

This is the law pertaining to mechanics' liens under the Alabama statute. College Court Realty Co. v. Letcher Lumber Co., 201 Ala. 362, 78 So. 218; Richardson Lumber Co. v. Howell, 219 Ala. 328, 122 So. 343.

It seems to be the general opinion that a bond of this nature does not cover material which is a part of the permanent equipment of the contractor. Clifton v. Norden, 178 Minn. 288, 226 N. W. 940, 67 A. L. R. 1227; Miller v. American Bond Co., 133 Minn. 336, 158 N. W. 432, 434; State v. So. Surety Co., 221 Ala. 113, 127 So. 805, 812; U. S. Rubber Co. v. American Bonding Co., 86 Wash. 180, 149 P. 706, L. R. A. 1915F, 951; National Surety Co. v. U. S. (C. C. A.) 228 F. 577, L. R. A. 1917A, 336; Franzen v. So. Surety Co., 35 Wyo. 15, 246 P. 30, 46 A. L. R. 496; United States Fid. & Guar. Co. v. Yazoo County, 145 Miss. 378, 110 So. 780; McElrath v. Kimmons & Sons, 146 Miss. 775, 112 So. 164, 680. And it does not include major repairs on its permanent equipment, but it does include such small and incidental repairs as result from ordinary wear and tear of the appliances used in performing the contract (Union Indemnity Co. v. State, 218 Ala. 132, 118 So. 148; Clifton v. Norden, 178 Minn. 288, 226 N. W. 940, 67 A. L. R. 1227), but not the purchase price of such appliances as wagons (Nye-Schneider-Fowler Co. v. Bridges, etc., 98 Neb. 27, 151 N. W. 942; Miller v. Amer. Bonding Co., 133 Minn. 336, 158 N. W. 432, 434); nor of automobiles or trucks, though worn out before the completion of the job (Clifton v. Norden, 178 Minn. 288, 226 N. W. 940, 67 A. L. R. 1227).

But it is contended that in classifying an appliance as a part of the permanent equipment, or as a supply, we are governed by the inquiry of whether it is in fact consumed by its ordinary use in the work. In the cases of Dennis v. Enke (S. D.) 224 N. W. 925, 928, and Clifton v. Norden, supra, and other cases emphasis was placed upon the fact that the appliances were not so consumed. In those cases the bond covered "machinery," "tools," and "equipment," as well as "materials" and "supplies." It was said that literally it included all equipment and machinery purchased and used on a given work, even though they were a part of the permanent equipment, and used on many projects, but that such was not the evident legislative intent; and, notwithstanding such words, they were held only to include those articles which would normally be useful and consumable on that project, and not such as in the usual course of things would serve on other projects.

In other cases, in which the bond did not use the words included in the cases last re-

ferred to, but used such words as "materials," "provisions," and "supplies," equipment was held not to be included, and supplies was defined as articles furnished for carrying on the work which from their inherent nature were necessarily consumed in that work. Franzen v. So. Surety Co., supra; U. S. Rubber Co. v. American Bonding Co., 86 Wash. 180, 149 P. 706, L. R. A. 1915F, 951. In some cases such a bond is held not to include even small tools which may not be consumable.

The rule seems to be general that the major articles of movable camp equipment are not "material" within the meaning of a bond. National Surety Co. v. U. S. (C. C. A.) 228 F. 577, 585, L. R. A. 1917A, 336; United States Fid. & Guar. Co. v. Yazoo County, 145 Miss. 378, 110 So. 780; McElrath v. Kimmons, 146 Miss. 775, 112 So. 164, 680.

In National Surety Co. v. U. S., supra, it is said as to machines and appliances that "their inclusion must be determined by their inherent character, and not by the length of time for which or the manner in which they happen to be used." The same idea prevailed in the Mississippi case, supra.

It is difficult to draw a formula which will conform to all the decisions of the various courts or their discussions on the subject. Our court has taken the position, as we have shown, that small tools are "supplies" covered by the bond, though they may ordinarily outlast the work. Other courts have held that they are not. But we think that the term "materials and supplies" should not include the major articles of what is commonly known as equipment ordinarily provided by the contractor with which he performs the contract, whether they are worn out on the project or not. They should be classified as "material and supplies" on the one hand or "equipment" on the other, according to their inherent nature, and not the circumstance that they do or do not outlast the job. In those cases, where a different view is expressed, it is rather a limitation on the broad words of the bond which expressly include "machinery" and "equipment" or "appliances" than a construction of the words "materials" or "supplies." We repeat in this connection, as we heretofore observed, that our statute embraces only "labor, material, feedstuffs and supplies."

We agree with appellant that, while the bond is liable for the labor, material, feedstuffs, and supplies furnished to a subcontractor, it is not thereby intended to provide that the bond shall also secure the payment of the amount due the subcontractor by the contractor in chief, without deducting from the amount of such debt that for which the bond may be subjected on account of such material, etc., furnished to the subcontractor. Such latter liability is in a sense a counter-claim, or matter of recoupment against the debt due to the subcontractor. Otherwise the latter could collect his debt in full, though the bondsman had paid for the materials furnished him. The liability of the bond to the materialmen, etc., of the subcontractor is that of a surety, to pay which the subcontractor is himself primarily liable. Therefore claims of such materialmen, etc., take precedence over the claim of the subcontractor against the contractor in chief, in respect to the obligations of the bond. If they equal or exceed the amount of the claim of the subcontractor, he cannot recover anything; neither can his assignee. Pettus v. Dudley, etc., Co., 218 Ala. 163, 118 So. 153.

Another question of primary importance is whether admissions made by the principal as to the claims of interveners are admissible as evidence against the surety on his bond. The authorities in this state seem to agree with those elsewhere that the question is affected by the time and occasion of such admission. The main inquiry is whether such admission was made during the transaction of the business for which the surety was bound. If it is a mere narrative of a transaction at a time when the business of the principal for which the surety is bound has terminated, it is mere hearsay, and not competent. If the principal is at the time performing the functions for which the surety is bound, an admission relating to the status of such business extending to the amount of liability then outstanding comes within the rule of admissibility. But, after the termination of the business for which the surety was bound, and no duty existed which the contractor is required to perform in connection with which the admission is made, it is not admissible against the surety. Dumas v. Patterson, 9 Ala. 484; Dennis v. Chapman, 19 Ala. 29, 54 Am. Dec. 186; Casky v. Haviland, 13 Ala. 314; Evans v. State Bank, 13 Ala. 787; Lewis v. Lee County, 73 Ala. 148; Walling v. Morgan County, 126 Ala. 326, 28 So. 433; Graves v. Ætna Ins. Co., 215 Ala. 250, 110 So. 390; W. T. Rawleigh Med. Co. v. Hooks, 16 Ala. App. 394, 78 So. 310. For a complete annotation of the subject see 60 A. L. R. 1500 et seq.; 21 R. C. L. 1092; 22 C. J. 405; 1 Greenleaf on Ev. (16th Ed.) § 187; 2 Wigmore on Ev. § 1077; United Am. Fire Ins. Co. v. Am. Bonding Co., 146 Wis. 573, 131 N. W. 994, 40 L. R. A. (N. S.) 661.

We think that a proper interpretation of the foregoing authorities justifies the ruling of the circuit court in admitting as evidence against appellant as surety declarations of the principal, while he was engaged upon the contract and executing the work, that the account of intervener was correct. His further statement that such items were used on the particular job made at the same time was within the res gestæ of the performance of

the contract secured by the bond, as a part of its progress. Such statements made after "the complete performance of the contract and final settlement thereof," as herein defined, would not be a part of the res gestæ, and would not be admissible against the surety.

### Benson Hardware Co.

This claimant was the original plaintiff, and the claim asset out in several counts of the complaint for which judgment was rendered consisted of several items, as follows:

1. Labor, material, etc., to the contractor .................. $603.36
2. Labor, material, etc., supplied by Fulgham to contractor, assigned to plaintiff ....... 162.71
3. Labor, material, etc. supplied by Stowers and Sport and assigned to plaintiff ....... 452.81
4. Labor, material, etc., supplied by Fulgham and assigned to plaintiff ................ 70.67
5. Labor supplied by Stowers and Sport (as subcontractors) 554.56

Though the contractor had other projects on hand, the evidence is sufficient under the rules we have stated to show a prima facie case of liability for the first item above, and we also think that the declarations of the contractor in this connection were admissible for the same reason. The inference that some of the material may have been used on other projects is not based upon evidence sufficiently clear to justify it as a proper conclusion.

But we observe that the complaint alleges that the labor, material, feedstuff, and supplies, constituting items 2, 3, and 4 of the claim, were furnished by Fulgham and Stowers and Sport, respectively, to the contractor, and were assigned to plaintiff. We do not find such a transfer, but the evidence shows that plaintiff furnished the items of those accounts to these parties, respectively, as subcontractors. As such, plaintiff could recover the items upon a complaint so alleging. The last item (No. 5) seems to be predicated upon a balance due the subcontractor by the contractor in chief. We have observed that the claim of the subcontractor is dependent upon whether anything is due on such contract after deducting amounts paid by the bondsmen for material, etc., supplied the subcontractor. Item 3 above seems to be for material, etc., furnished the subcontractor Stowers and Sport, and item 5 for the full amount of the balance due on the subcontract without any deduction for the material, etc., and the judgment rendered for plaintiff embraced both those items, apparently. In this we cannot concur, though the claim for the balance of the contract price was assigned to plaintiff by the subcontractor. The record also shows other claimants of material, etc.,

supplied these subcontractors for which judgment was properly rendered against the bondsman. We think the court should ascertain the full amount of the claims for such material, etc., supplied these subcontractors for which judgment is rendered against the bondsman, and, if there is a balance due on the subcontract after deducting the sum of them, that balance only can be recovered by the plaintiff on such assigned claim.

We also think that the items of material, etc., supplied by plaintiff to the subcontractors should be claimed as such, and not by way of assignment to it by the subcontractors without a showing that such amounts are due to the subcontractors by the contractor in chief, and that such claims were duly assigned to plaintiff. We do not understand that such is shown by the evidence, though it is the nature of the complaint. Counsel argue as though the claim were for supplies furnished a subcontractor. This argument finds support in the evidence but not in the complaint.

We feel constrained, therefore, to reverse the judgment in favor of Benson Hardware Company.

Reversed and remanded.

### Covington Motor Co.

This account was for two trucks, a secondhand Dodge and a new Chevrolet. The Dodge was worn out and junked, the Chevrolet was carried off when the work was complete, but said to be practically worthless. According to our interpretation of the contract as heretofore stated, those items constituted a part of the permanent equipment of the contractor, and the extent of their use and condition of worth when the job was complete is a mere incident.

The judgment for this intervener is therefore reversed and remanded.

### S. J. McGowin.

This account was for groceries sold the contractor. We have heretofore referred to our case of Union Indemnity Co. v. Handley, supra, as establishing the fact that groceries furnished for employees on the job, useful and consumed in its performance, are supplies within the meaning of the bond, and our law. But we cannot agree that the evidence shows that the groceries shown by this account were supplied for the laborers, or at least that any definite portion of them were thus supplied. The bond will not embrace groceries for the contractor and his family, though there was furnished from his kitchen meals to some of his employees on the job. The claim shows groceries of a nature furnished and suitable for the family of the contractor, but much of it is not of the nature that would be supplied to laborers. From

440

the groceries thus supplied, the contractor appears to have provided for the needs of his family as well as some of his employees.

We think that this claim was improperly allowed in its entirety, and the evidence does not undertake to separate the items, which are proper charges against the bond from those which are not.

The judgment is reversed and remanded.

### D. R. Cuthbreath.

This is a claim for labor performed under a subcontract on the job covered by the bond, and the evidence is sufficient to show a liability for the amount of the claim.

This judgment is affirmed.

### Andalusia Dry Goods Co.

This was an account for overalls, shirts, pants and other small items of clothing. The evidence shows they were furnished to the contractor for his hands engaged in work on this particular project. They constitute proper items of liability under the authority of our case of Union Indemnity Co. v. Handley, supra, and the many cases listed in 46 A. L. R. 511 et seq. This makes out a prima facie liability, and there is no evidence contra.

This judgment is affirmed.

### R. I. Kearley.

The items of this claim which the court allowed were fairly shown to have been veterinary services by the claimant to the mules of the contractor while performing the contract in question. We think the same principle should control this claim as applies to the small incidental repairs to the appliances and tools of the contractor, and were properly allowed by the court.

Affirmed.

### Dudley-Bar Co.

There are two items of this account. There is a small discrepancy in the estimate by the highway department of the amount of reinforcing steel used and that of the intervener. The highway department calculated the weight by allowing so much per lineal foot. Intervener weighed it out on the scales. However, the highway engineer says that there was some left on the right of way, and that there was some extra steel. The discrepancy was in the difference between 44,457 pounds shipped for the job as weighed on the scales by the intervener, and 42,353 pounds allowed by the highway department "as being actually shipped and incorporated in the work," as calculated but not weighed. The engineer testified that "there is liable to be a discrepancy" because of the way it was figured, and yet he says some was left over. The court doubtless considered all this evidence, and could have found that the difference or discrepancy was due to the method of calculation, and no evidence showed just what amount was left over. We are not willing to disturb this result.

The second item relates to about 6,000 feet of galvanized road fabric, sometimes called woven wire mesh, for guard rail. The claim is that the contract called for "galvanized cable" for the guard rail, and, though the highway department required the substitution, the surety was not responsible because not in the letter of the contract. After default was made and the surety company was completing the job, its representative ordered an additional 400 feet of the same guard rail. Whether this act was a ratification of such change we think is not necessary to justify the claim for the total amount of it because the contract and bond both provide that the specifications are made part of the obligation; and we think that a proper interpretation of them permits the highway department to make alterations in the plans and quantities, and that proper adjustment shall be made on account of the same.

It appears that all the woven wire charged was used on this job, and that this was approved by the state, and included in the final estimate. We think that the court properly allowed this item. We cannot say, therefore, that there was error as to the judgment for this intervener.

Affirmed.

### Newport Culvert Co.

This was for pipe sold and used on the project in question. The claim of appellant is that the engineer testified that 804 feet is all that was actually used in the works for which the state paid. It appears that under the contract as made 48 feet more than that amount were needed, but later another contract overlapped this one in which the 48 feet were' used and paid for by the state on the other contract. But, when the contract on this job was made and the pipe ordered, it was covered by this contract and furnished for it, and we think properly covered by the bond. Of course, the intervener should not be paid on both jobs for it, but no contention is here made that this has been sought.

The other contention is that there was a part of this pipe left by the roadside and not used. But the evidence indicates that this was put down and taken up for some purpose not disclosed, and afterwards could not be used. The contractor, of course, was required to supply additional pipe to take its place, and this was properly covered by the bond.

We find no error as to this claim.

Affirmed.

## S. & W. Lumber Co.

This claim was for lumber sold for the project in question and went out on the works. The evidence does not show whether the contractor used any of it elsewhere or not.

We have shown that this makes out a prima facie liability, and, nothing to the contrary appearing, there was no error in allowing it.

Affirmed.

## Jesse L. Everett.

■ This was a bill for groceries and feedstuff furnished to Stowers and Sport as subcontractors on this job. The groceries the evidence shows went to their camp on the road work. None of it went to supply the needs of their families, but was consumed at the camp by the men engaged on the works. All of this could be fairly inferred from the evidence, and fixed a liability on the bond. The claim of Stowers and Sport against the bond, as we have shown, can only be allowed to the extent that it exceeds the liability of the bond on account of labor, material, feedstuffs, and supplies furnished them. Whether or not there is anything due the subcontractor does not affect the liability of the bond for such labor, material, etc., furnished him.

This judgment is affirmed.

## John Stone.

This is for the labor of a man and team to the contractor for the job secured by the contract, and no reason is shown why it is not a proper charge. The court correctly so ruled.

Affirmed.

## Dixon Bros.

■ This is a claim for gasoline and oil and kitchen supplies for the camp sold to the contractor and his sub-contractors on the job, and we find no error by the court in allowing it.

Affirmed.

## J. J. Mostes Auto Co.

This is also a claim for gasoline and oil and minor repairs on the trucks of the contractor, and at his instance and request. They are embraced in the rule stated in Union Indemnity Co. v. State, 218 Ala. 132, 118 So. 148.

Affirmed.

## Trammell Rawls.

Appellant finds no fault with this claim.

Affirmed.

## C. D. Brooks.

■ This is a claim for small items of hardware, cement, and sand and other small consumable articles such as are well within the term "supplies" as defined in our cases. The evidence shows that they were sold to the contractor for this job, and there is nothing to show that any certain part was not so used. We cannot indulge in speculation that it was otherwise used, in the absence of substantial evidence.

There is no error shown in allowing it.

Affirmed.

## Andalusia Manufacturing Co.

This is a claim for lumber sold to the contractor useful and sold for forms for culverts, head walls, guard posts, etc., on this job. No evidence shows that they were not so used, and nothing impeaches the inference that they are proper charges for material and supplies.

There was no error shown in its allowance.

Affirmed.

## D. A. Mason.

This was for lumber sold for this job, and was used in it as the highway engineer testified. There was no error in allowing it.

Affirmed.

## Harrelson and Everett.

This account is for hauling sand and gravel for use, and actually used, on this project, and not paid for. No error appears.

Affirmed.

## W. S. Dickey Clay Mfg. Co.

■ This is a claim for a balance due for clay pipe sold to the contractor to be used on this project; 1,552 feet were thus sold and delivered. The highway engineer testified that 1,349½ feet of it went into the project, and that it was all purchased from intervener. There is nothing to show that the balance was not in some other way consumed in an effort to complete the project, as by breakage or by taking up and substituting other pieces and ruining some of it by such process. Merely because the engineer testified that only 1,349½ feet went into the project does not prove that the balance was not consumed in performing the contract or was diverted to some other use.

We find no error.

Affirmed.

## J. A. Tisdale.

■ This is a claim under contract with the contractor for transporting his employees engaged on this project from one place to an-

442

other during the day's work. It is sufficiently proven, and no valid impeachment of it is shown.

Affirmed.

Sherrill Oil Co.

Counsel for appellant admit in their reply brief that the evidence supports the finding of the circuit court.

There was therefore no error in its allowance.

Affirmed.

Our conclusion is that the judgment in favor of Benson Hardware Company, Covington Motor Company, and S. J. McGowan are reversed, and the cause is remanded for another trial of those claims.

As to all the other claimants, the judgments are affirmed.

Substantially half of the transcript on this appeal is composed of documentary matter which has no bearing on the issues and which should have been curtailed in preparing the bill of exceptions for which those appellees whose judgments are reversed should not bear the expense.

We therefore tax against appellees Benson Hardware Company, Covington Motor Company, and S. J. McGowan each one-twentieth of the cost of this appeal, including as a part of such total cost only one-half the cost of preparing the transcript of appeal. All the balance of the cost of appeal is taxed against appellant.

Reversed and remanded in part, and affirmed in part.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.